McGinley *v.* Scott, Appellant.

312

Argued September 26, 1960.   Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Anne X. Alpern,* Attorney General, for appellants.

*Drew J. T. O'Keefe,* with him *John Ryan,* and *O'Keefe, Knecht and Ryan,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 11, 1960:

These appeals involve a question as to the power of the Pennsylvania State Senate to adopt a resolution at a regular session in an even-numbered year creating a committee of its members for the purpose of making certain specified investigations unrelated to either revenue or appropriations. The 1960 Session of the Pennsylvania Legislature has not yet adjourned sine die but is in recess and is scheduled to reconvene on October 12, 1960.

After the House of Representatives had recessed on June 17, 1960, the Senate adopted a resolution providing for the appointment of a committee of five of its members for the purpose of conducting an investigation into alleged election law frauds in Philadelphia and the conduct of the district attorney of Philadelphia County in respect of such putative offenses.[1] The

---

[1] The resolution in full reads as follows:

"RESOLVED, That the President Pro Tempore of the Senate appoint five members of the Senate who shall constitute a committee to investigate into the charges of election frauds in Philadelphia, and also investigate into the actions of the District Attorney of Philadelphia with respect thereto, and be it further

"RESOLVED, That the committee shall also investigate similar charges in any other county in which a district attorney has failed or refused to take action or has appeared to have acted in a negligent manner and the Chairman of the Committee has received written notice or complaint of such charges; and be it further

"RESOLVED, That the committee may hold hearings, take testimony and make its investigations at such places as it shall deem necessary within this Commonwealth. It may issue subpoenas under the hand and seal of its chairman, commanding any person to appear before it and to answer questions touching matters prop-

314

resolution empowered the committee to hold hearings, take testimony and subpoena witnesses and records; it also required the committee to report its findings and recommendations to the Senate as soon as possible for remedial legislation or other appropriate action. The members of the committee were duly appointed by the president pro tempore of the Senate, as contemplated by the resolution, and are the defendants in the present suit.

The same day that the members of the committee convened in Philadelphia for the purpose of their appointment and began examining witnesses (viz., August 23, 1960), the plaintiff, a taxpayer and resident of Philadelphia, filed his complaint in this case in a court of common pleas of Philadelphia County seeking to restrain the members of the committee from taking any action, as authorized by the resolution, and to enjoin the members of the committee from making any expenditures of funds of the Commonwealth of Pennsylvania. The court granted a rule on the defendant committee members to show cause why a preliminary injunction should not issue, returnable August 29, 1960.

On August 26, 1960, the defendants, represented by the Attorney General, filed preliminary objections

erly being inquired into by the committee and to produce such books, papers, records and documents as the committee deems necessary. Such subpoenas may be served upon any person and shall have the force and effect of subpoenas issued out of the courts of this Commonwealth. Any person who wilfully neglects or refuses to testify before the committee or to produce any books, papers, records or documents shall be subject to the penalties provided by the laws of the Commonwealth in such cases. Each member of the committee shall have power to administer oaths and affirmations to witnesses appearing before the committee; and be it further

"RESOLVED, That the committee report its findings, together with its recommendations, for remedial legislation or other appropriate action as soon as possible."

to the complaint, asserting that the Court of Common Pleas of Philadelphia County was without jurisdiction to restrain the defendants from performing any official act, either in their capacity as State officers or as the representatives of an instrumentality of the State, and that jurisdiction of the complaint was exclusively in the Court of Common Pleas of Dauphin County. The defendants also demurred to the complaint on the ground that it did not allege a cause of action cognizable in equity; that the resolution constituting the committee was in accordance with and under the authority of the Pennsylvania Constitution; and that the committee has full constitutional authority to hold hearings and perform all the duties and functions prescribed by the resolution.

Argument was had in the matter on August 31, 1960, before the court below which, on September 12, 1960, filed an opinion and accompanying order overruling defendants' preliminary objections and enjoining the defendants preliminarily from performing the duties imposed upon them by the resolution. The order gave the defendants twenty days within which to answer the complaint on the merits. The Attorney General forthwith appealed the order to this court on September 13, 1960, and contemporaneously petitioned for advancement of the argument. With notice to counsel for the plaintiff, we entered an order on the same day listing the appeal for argument in Pittsburgh on September 26, 1960, which has been had.

The defendants' preliminary objection that the suit could be brought only in the Court of Common Pleas of Dauphin County is well taken and must be sustained, not, however, because the Court of Common Pleas of Philadelphia lacked jurisdiction, either of subject matter or person, but because the *venue* of the controversy is exclusively in Dauphin County.

Jurisdiction of subject matter relates to the competency of a court to hear and determine controversies of the general nature of the matter involved, which, in this instance, is a suit in equity for an injunction to enjoin and restrain acts allegedly contrary to law. Jurisdiction of the person is ordinarily acquired by service upon him of the court's process within the territorial limits of its authority. Venue is the right of a party sued to have the action brought and heard in a particular judicial district. Jurisdiction of subject matter can never attach nor be acquired by consent or waiver of the parties, while venue may always be waived.

Section 13 of the Act of June 16, 1836, P. L. 784, 17 PS §281, conferred general equity jurisdiction on all of the courts of common pleas of the Commonwealth, as follows: "The several courts of common pleas shall have the jurisdiction and powers of a court of chancery . . . in such . . . cases as the said courts have heretofore possessed such jurisdiction and powers under the Constitution and laws of this commonwealth." This jurisdiction unquestionably embraces the power of every court of common pleas of the Commonwealth to prevent or restrain "the commission or continuance of acts contrary to law, and prejudicial to the interest of the community, or the rights of individuals." See *Zerbe Township School District v. Thomas,* 353 Pa. 162, 168, 44 A. 2d 566, and cases there cited.

However, Equity Rule 1503(c) of the Pennsylvania Rules of Civil Procedure prescribes that "An action against the head of an executive or administrative department, a departmental administrative board or commission or an independent administrative board or commission, or an officer or instrumentality of the Commonwealth may be brought in and only in Dauphin

County." This Rule was adopted and promulgated by virtue of the authority conferred upon this Court by Section 1 of the Act of June 21, 1937, P. L. 1982, as amended, 17 P.S §61, which, in presently material part, provides that, "... the Supreme Court of Pennsylvania shall have the power to prescribe by general rule the forms of actions, process, writs, pleadings, and motions, and the practice and procedure in civil actions at law and in equity for the courts of common pleas ... *Provided, That such rules ... shall neither abridge, enlarge, nor modify the substantive rights of any litigant nor the jurisdiction of any of the said courts* ..." (Emphasis supplied).

It is plain enough, therefore, that what Rule 1503(c) prescribes is the venue of actions of the type therein referred to, and is not a limitation or a restriction upon the equity jurisdiction of the courts of the Commonwealth outside of Dauphin County. Manifestly, if the holding were to be otherwise, the rule would automatically be invalidated as an excessive exercise of our rule-making power under the Act of 1937, supra.

Thus, venue, unlike jurisdiction, being a matter of procedure, and not substance, is within the competency of the Procedural Rule's prescription. "Essentially venue is an incidence of procedure. It is part of that body of law which bounds and delineates the forum and the manner and mode of enforcing a litigant's rights. It is distinguishable from and is not within the field of law, known as substantive, which recognizes, creates and defines rights and liabilities and causes of action.": *Hadlich v. American Mail Line*, 82 F. Supp. 562, 563 (1949).

The Act of May 26, 1931, P. L. 191, 12 PS §§104-105, upon which the plaintiff relies, was suspended absolutely by the Rules of Civil Procedure and is with-

out bearing upon the meaning and intent of Rule 1503(c).[2] The Act of 1931 was made applicable to a "State officer" which the Act defined, in Section 1, as "the head of any administrative department or the chief executive officer of any independent administrative board or commission of the Commonwealth." Rule 1503(c) contains no such limitation and provides that "An action against . . . an officer or instrumentality of the Commonwealth may be brought in and only in Dauphin County." There appears to be no rational ground for differentiating between members of the legislative, executive and judicial branches of government in order to determine who is included in the definition of "officers . . . of the Commonwealth." A State Senator has been held to be such an officer (see *Commonwealth v. Clark,* 123 Pa. Superior Ct. 277, 294, 187 Atl. 237) and legislative committees are instrumentalities of the Commonwealth, within the meaning of Rule 1503(c).

A court's determination that the venue of an action lies within its judicial district, being interlocutory, is not of itself appealable. However, the question of venue is present here on the defendants' appeal from the preliminary injunction entered against them. Section 1 of the Act of February 14, 1866, P. L. 28, 12 PS §1101, expressly makes the granting of a preliminary injunction appealable. On such an appeal, we look only to see if there were any apparently reasonable grounds for the action of the court below and, ordinarily, will not further consider the merits of the case or pass upon the reasons for or against such action unless

---

[2] The Act of 1931 is basically a venue statute. In dealing with such statutes, in cases where the differentiation of "venue" and "jurisdiction" was not material to the decision, courts have at times inappropriately used the terms interchangeably. See, e.g., *Merner v. Department of Highways,* 375 Pa. 609, 101 A. 2d 759.

it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable: *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 343-344, 123 A. 2d 626. It is apparent that no reasonable grounds exist for the action of the court below, since it erroneously interpreted the law pertaining to the venue of the action.

So much suffices for the vacation of the decree entered by court below and the dismissal of the plaintiff's complaint and, if only private litigants were concerned, we would proceed no further. But, this is a public matter and, if the disposition of these appeals were to be confined to our decision on the procedural issue of venue alone, the important substantive questions raised and fully argued before us by counsel for the plaintiff and by the Attorney General representing the appellant committee members, could immediately be relitigated in the Court of Common Pleas of Dauphin County, whose final decree would then be appealable to this court and we would again have before us with consequential delay the same fundamental problems. In that situation, and inasmuch as an early final decision on the merits by this court would appear to be in the public interest, we shall now consider and pass upon the substantive questions raised on these appeals, as well as the scope of the resolution which the record brings before us.

Article II, Section 4, of the Pennsylvania Constitution provides that "At regular sessions convening in even-numbered years the General Assembly shall not enact any laws, except laws raising revenue and laws making appropriations." The court below concluded that the Senate resolution here involved is an unconstitutional attempt by the Senate to enact a law. With that conclusion we cannot agree. Article II, Section 4, restricts the type of "laws" that may be enacted by

the legislature at a regular session in an even-numbered year. It has no reference to, nor does it limit, any power of either House of the General Assembly except in respect of the enactment of laws. For example, this constitutional provision does not, as counsel for the plaintiff concedes, restrict the power of the Senate to approve appointments made by the Governor. Neither does it limit the right of the legislature to authorize committee investigations for any proper purpose. The right to investigate in order to acquire factual knowledge concerning particular subjects which will, or may, aid the legislators in their efforts to determine if, or in what manner, they should exercise their powers, is an inherent right of a legislative body, ancillary to, but distinct from, such powers. It is immaterial that laws drafted as a result of the legislative investigation can not be passed at the session at which the committee was constituted.

Moreover, the differences between laws and resolutions are fundamental. A law is a bill that has been passed by a majority of the members of both Houses of the General Assembly and has either been signed by the Governor or has not been acted upon by him within the time prescribed by the Constitution after its passage by the legislature, or if it has been vetoed by the Governor, has again been passed by both Houses with an approving vote of at least two-thirds of the members of each House. Resolutions, on the other hand, may be adopted by either one, or both, of the Houses of the General Assembly and do not require the Governor's signature or approval to validate them and are not subject to veto by the Governor. In *Scudder v. Smith*, 331 Pa. 165, 170, 200 Atl. 601, this court, in pointing out the difference between a law and a resolution, said: "Section 1 of Article III of the Constitution provides: 'No law shall be passed except by Bill,

and no Bill shall be so altered or amended on its passage through either House as to change its original purpose.' In the Southwark Bank v. The Commonwealth, 26 Pa. 446, 450, this court said: 'A bill is the draft or form of an act presented to the legislature, but not enacted. An "act" is the appropriate term for it after it has been acted on by, and passed, the legislature. It is then something more than a draft or form. It has a legal existence as "an act" of the legislative body, because it becomes a law, without further action from any other branch of the government, if the executive takes no measures to prevent it.' A 'Bill' has been defined to be 'a form or draft of a law presented to a legislature for enactment': Webster's New International Dictionary. A 'Joint Resolution' has been defined by the same authority to be 'A resolution adopted jointly by the two branches of a legislative body.' A 'resolution' by the same authority has been defined as 'A formal expression of the opinion or will of an official body or a public assembly, adopted by vote; as a legislative resolution.' When the Constitution provided that 'no law shall be passed except by bill,' it meant by 'a form or draft of a law submitted to the legislature for enactment'; it did not recognize a mere 'formal expression of opinion' as adequate to the *creation of a law.*"

The difference between a law and a legislative resolution is plain enough; and, it is only "laws" that come within the Constitutional restriction of Article II, Section 4. We accordingly hold that the Senate resolution involved in this case is not a "law" within the purview of Article II, Section 4, of the Pennsylvania Constitution, and that the adoption of the resolution at the 1960 regular session was not thereby prohibited.

The clause in the Senate resolution which assumes to direct the committee members to investigate "into the actions of the District Attorney of Philadelphia County with respect [to charges of alleged election frauds in that county]" is beyond the constitutional power of the State Senate to authorize. And, it is not only within the unquestionable province, but is the bounden duty, of the judiciary to so declare when occasion requires.

As already mentioned, the justification for a legislative investigation, whether conducted by one or both of the houses of the General Assembly, is the ascertainment of facts and other relevant information to aid the members of the legislative bodies in formulating, drafting and enacting remedial or other beneficial laws. Such is the predominant legally permissible purpose of a legislative investigative committee. There are, however, several ancillary purposes. For instance, the Senate may properly, as it sometimes does, constitute a committee of its members to investigate the qualifications of gubernatorial appointees whose confirmation requires Senate approval. The House may also investigate the conduct of any governmental official in furtherance of a possible exercise of its constitutional jurisdiction to institute impeachment proceedings. Article VI, Section 1, of the Pennsylvania Constitution expressly provides that "The House of Representatives shall have the sole power of impeachment." And, in this same connection, Section 2 of Article VI provides that "All impeachments shall be tried by the Senate ... [and] no person shall be convicted without the concurrence of two-thirds of the members present." Thus, the members of the Senate actually sit in judgment on the truth or falsity of impeachment charges. It would not only be unthinkable but an unconstitutional denial of procedural due process for the Senate to investigate

into the conduct of an official and then sit in judgment on his guilt or innocence of impeachment charges arising out of the investigation.

Moreover, the legislature could not constitutionally enact any law to suspend or remove from office or otherwise punish in any way the district attorney of any county even if an investigation should happen to reveal that the particular district attorney was in some manner derelict in his duty. A district attorney is a constitutional officer, elected by the people of the county which he serves (Article XIV, Sections 1 and 2 of the Pennsylvania Constitution) and, for any misfeasance or malfeasance in the discharge of his public duties, the criminal law, with its penal sanctions, provides the appropriate procedure for an adjudication of his guilt or innocence.

Since the Senate is without constitutional power to investigate the conduct of a particular district attorney, the proposed investigation of the district attorney of Philadelphia County, pursuant to the resolution here involved, if carried out, would not only serve no useful purpose but would do violence to the principles of our constitutional form of government. There is no such thing in this country as "parliamentary sovereignty." And, legislative investigations must be kept strictly within their proper bounds if the orderly and long-established processes of our coordinate branches of government are to be maintained.

While we do not approve the decree of the court below, as our order of reversal evidences, we wish to make it clear, in view of the illy considered, or at least unthinking, criticisms lately leveled at the court below for its decision in this very case, that the lower court's action was not a "judicial impertinence" but was within its judicial authority.

Decree vacated and complaint dismissed; the parties to pay their respective costs.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE BELL:

The State Senate of Pennsylvania on June 17, 1960, adopted a resolution which in material parts reads as follows:

"RESOLVED, That the President Pro Tempore of the Senate appoint five members of the Senate who shall constitute a committee to investigate into the charges of election frauds in Philadelphia, and also investigate into the actions of the District Attorney of Philadelphia with respect thereto, and be it further

"RESOLVED, That the committee shall also investigate similar charges in any other county in which a district attorney has failed or refused to take action or has appeared to have acted in a negligent manner and the Chairman of the Committee has received written notice or complaint of such charges; and be it further

"RESOLVED, That the committee may hold hearings, take testimony and make its investigations at such places as it shall deem necessary within this Commonwealth. It may issue subpoenas . . .; and be it further

"RESOLVED, That the committee report its findings, together with its recommendations, for remedial legislation or other appropriate action as soon as possible."

I am convinced that the Senate had power to pass this resolution. The Court of Common Pleas No. 6 of Philadelphia County held (1) that it had jurisdiction of a bill for an injunction to restrain the Senate Committee, and (2) that the resolution was illegal and unconstitutional. Each of these conclusions was erroneous.

Rule 1503(c) of the Pennsylvania Rules of Civil Procedure provides: "An action against the head of an executive or administrative department, a departmental administrative board or commission or an inde-

pendent administrative board or commission, or an officer or instrumentality of the Commonwealth may be brought in and only in Dauphin County."

A State Senator is an officer of the Commonwealth of Pennsylvania, an office which was created by Article XIV, §1 of the Constitution of Pennsylvania: *Commonwealth v. Clark,* 123 Pa. Superior Ct. 277, 187 A. 2d 236; *Lamar v. United States,* 241 U. S. 103; 81 C.J.S., §52; 42 Am. Jur., Public Officers, §20; *Brown v. The Superior Court of the State of Arizona,* 81 Ariz. 235, 303 P. 2d 990 (1956); *Watson v. State Election Board,* 302 P. 2d 134 (Okla. 1956); *State ex rel. Stadter v. Patterson,* 197 Ore. 1, 251 P. 2d 123 (1952); *State ex rel. Grant v. Eaton,* 114 Mont. 199, 133 P. 2d 588 (1943); *Rich v. Industrial Accident Commission,* 98 P. 2d 249, 36 Cal. App. 2d 628 (1940); *Roberts v. Millikin,* 200 Wash. 60, 93 P. 2d 393 (1939); *In re Anderson,* 164 Wis. 1, 159 N.W. 559 (1916). See also: *Commonwealth ex rel. Foreman v. Hampson,* 393 Pa. 467, 473, 143 A. 2d 369.

In *Commonwealth v. Clark,* supra, the defendant was a Senator of Pennsylvania at the time of the crimes for which he was indicted and convicted. The Superior Court, speaking through President Judge KELLER, said (page 294): "The defendant was an 'officer of this Commonwealth' within the meaning of the section, [§12 of the Criminal Code, Act of March 31, 1860, P. L. 382] . . . ."

Senators and members of the Legislature of Pennsylvania are required by the Constitution (Article VII, §1) to take an oath of office and the Constitutional provision directs: "The foregoing oath shall be administered by some person authorized to administer oaths, and in the case of State officers and judges of the Supreme Court, shall be filed in the office of the Secretary of the Commonwealth, . . . ."

In *Lamar v. United States,* supra, the Court said: ". . . the common understanding that a member of the House of Representatives was a legislative *officer** of the United States was clearly expressed in the ordinary, as well as legal, dictionaries."

We are all agreed that the Court of Common Pleas of Philadelphia County could not consider the questions herein raised; they could only be determined in and by the proper Court in Dauphin County. The majority believes that this is so because venue exists only in Dauphin County. I believe that *it is a question of jurisdiction,* and jurisdiction and venue exist only in Dauphin County. In this connection the difference between venue and jurisdiction is therefore of little, if any, importance. However, this Court decided this exact question in *Merner v. Department of Highways,* 375 Pa. 609, 101 A. 2d 759. In that case a husband and wife filed a bill in equity in the Court of Common Pleas of Bucks County, praying for an injunction against the Department of Highways to restrain them from diversion of drainage water onto plaintiffs' property. Mr. Justice Jones, speaking for a unanimous Court, sustained preliminary objections to the bill and said (pages 610, 611) : "The question in this case is one of *jurisdiction.* . . . Each of the defendants filed preliminary objections, questioning, inter alia, the jurisdiction of the court on the ground that, as to two of the defendants, viz., the Secretary of the Department of Highways of the Commonwealth and the State Public School Building Authority, the Court of Common Pleas of Dauphin County had *exclusive jurisdiction.* . . .

"Article I, Section 11, of the Pennsylvania Constitution provides that 'Suits may be brought against the

---

* Italics throughout, ours.

Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.' In an exercise of this express constitutional provision, the legislature by Act of May 26, 1931, P. L. 191, 12 PS §105, vested *jurisdiction* of actions against the Commonwealth in the Court of Common Pleas of Dauphin County. The procedure has since been carried forward and its scope specified with greater detail for equity practice by Equity Rule 1503(c) of the Pennsylvania Rules of Civil Procedure which provides that 'An action against the head of an executive or administrative department, a departmental administrative board or commission or an independent administrative board or commission, or an officer or instrumentality of the Commonwealth may be brought in and only in Dauphin County.'

"The bill in the instant case was filed on June 30, 1952. The Equity Procedural Rules became effective one day later, viz., July 1, 1952: see Rule 1536. While, as a practical matter, it would make no difference in the result whether the question here involved were decided according to the provisions of the Act of 1931, supra, or in accordance with Equity Rule 1503(c), . . . .

". . . We may not read into the cited Acts an inclusion of the Commonwealth as a party defendant especially when such *jurisdiction* has been otherwise statutorily prescribed." (Page 613) See to the same effect *Strank v. Mercy Hosp.*, 376 Pa. 305, 102 A. 2d 170; *Hauger v. Hauger*, 376 Pa. 216, 101 A. 2d 632; *Gardner v. Allegheny County*, 382 Pa. 88, 95, 114 A. 2d 491.

This Court has wisely decided, in view of the tremendous importance to the public of the questions involved, to point out that even if the action had been brought in Dauphin County the Legislature had the right to make a proper investigation of alleged voting frauds in Philadelphia.

The recent Constitutional Amendment of 1959, Article II, §4, as amended, provides that the General Assembly shall be convened in even numbered years and "The General Assembly shall not enact any laws, except laws raising revenue and laws making appropriations". The lower Court held that a resolution was a law, and therefore no resolution could be passed in this Session of 1960 except for revenue purposes or the making of appropriations. This was clear error. The Legislature and separately each branch thereof continue to have the inherent and Constitutional authority to perform non-law making functions in this and in every Session of the Legislature, including, on the part of the Senate, the confirmation or rejection of executive nominations, the disposition of resolutions, and the conduct of investigations. The power and right of the Legislature and of each branch thereof to conduct proper investigations into matters involving the making or rejection of laws is basic and fundamental and is a power which should be liberally construed and sustained in the safeguarding and preservation of a Republican form of government. As Mr. Justice FRANKFURTER said in *Tenney v. Brandhove*, 341 U. S. 367, 377: "Investigations, whether by standing or special committees, are an established part of representative government. . . ."

In brief, the Legislature has every power which is not specifically or by necessary implication prohibited or restricted by the Constitution: *Likins' Petition (No. 1)*, 223 Pa. 456, 72 A. 858; *Collins v. Commonwealth*, 262 Pa. 572, 106 A. 229; *Commonwealth v. Wormser*, 260 Pa. 44, 103 A. 500; *Commonwealth ex rel. Attorney General v. Benn*, 284 Pa. 421, 131 A. 253.

I differ strongly with the majority opinion that the Senate has no right or power to investigate "for the purpose of remedial legislation or other appropriate

action" the actions of the District Attorney of Philadelphia with respect to charges of election frauds in Philadelphia and to investigate similar charges in any other county in which the District Attorney has failed or refused to take action or has appeared to have acted in a negligent manner, etc. The power of a Legislature to make a proper investigation of possible legislation is a basic fundamental right and power which the Legislature and each branch thereof possesses and in the interest of the public welfare must continue to possess unless prohibited or restricted by the Constitution. For example, the Legislature has the power to enact legislation dealing with the powers, functions, duties, restrictions and limitations (as well as the salary) of a duly elected or appointed District Attorney and to repeal laws and to consider and to pass amendments or new laws in connection therewith. These powers it has exercised on a myriad of occasions. If it has such power, and it undoubtedly has, then it follows as night follows day that it can conduct investigations which will aid it in wisely determining what, if any, legislation should be considered or enacted or altered or repealed. Many authorities support this wise position.

The majority has surprisingly decided that the Senate cannot investigate district attorneys who have "failed or refused to take action or have appeared to have acted in a negligent manner [in connection with election frauds]." We say "surprisingly" because neither of the parties argued or briefed, nor did they or the lower Court discuss or even consider the distinction and the exclusion made by the majority with respect to district attorneys. This is not an investigation for purposes of impeachment; this is an investigation for purposes of remedial or appropriate legislation of the conduct of district attorneys who have failed

or refused, or who have apparently failed or refused, to take action in connection with alleged election frauds. The majority correctly asserts that the Legislature cannot constitutionally suspend or remove from office a district attorney since he is a constitutional officer who is punishable in accordance with the Constitution for any misfeasance or malfeasance in office. However, the majority has completely missed the point. This is not an attempt, we repeat, to remove from office or *constitutionally* punish the District Attorney of Philadelphia. This, by the clear terms of the Senate's resolution, is an investigation of alleged negligent conduct by district attorneys for the purpose of remedial legislation or other appropriate legislative action. The legislature is one of the three great branches of our Republican form of Government. It can do anything which it is not expressly or by necessary implication prohibited from doing by the Constitution. One of its most important functions is the power of investigation for purposes of legislation—initial, amendatory, remedial or repealing legislation.

Not only is there no authority of any kind whatsoever to support the majority's opinion on this branch of the case, but the law has been to the contrary for nearly one hundred years. *Commonwealth v. McHale,* 97 Pa. 397, 406; *Commonwealth v. Lehman,* 309 Pa. 486, 491-492, 164 A. 526; *Dauphin County Grand Jury Investigation (No. 3),* 332 Pa. 358, 362-363, 2 A. 2d 809; *Commonwealth v. Havrilla,* 38 Pa. Superior Ct. 292, 295; *Commonwealth ex rel. v. Irvin,* 110 Pa. Superior Ct. 387, 393, 168 A. 868.

In *Commonwealth v. McHale,* 97 Pa., supra, defendants were indicted in connection with election frauds. A motion to quash the indictment because it was signed by a man who was specially appointed by the Court to try the cases and was not signed by the district attor-

ney, was overruled. Defendant's counsel in that case contended for the proposition which is herein adopted by the majority, namely, that the Constitution protects a duly elected district attorney and prevents his removal. Mr. Justice (later Chief Justice) PAXSON, speaking for a unanimous court, said: ". . . The appointment appears to have been regularly made in accordance with the provisions of said act, . . . . But it is said the appointment was illegal because the Constitution adopted since the act of 1866 was passed, makes the district attorney a constitutional officer, and as such he cannot be stripped of his powers by the legislature. There is little force in this suggestion. While the legislature may not abolish the office, it can control the officer. They can regulate the performance of his duties, and punish him for misconduct, as in the case of other officers. And where he neglects or refuses to act, or where, from the circumstances of a given case, it is improper and indelicate for him to act, it is competent for the legislature to afford a remedy. . . ."

In *Commonwealth v. Lehman,* 309 Pa., supra, the defendant objected to the authority of a trial court to request the attorney general to appoint an attorney to supersede the district attorney for the preparation and trial of that case. The Court dismissed the objections and Mr. Justice LINN, speaking for a unanimous court, said (pp. 491-492) : ". . . As the Constitution does not prescribe the duties of the district attorney, it has been held that the legislature may regulate the performance of the duties of the office and provide for cases in which it would be improper for the elected officer to act: Com. v. McHale, 97 Pa. 397; Com. v. Havrilla, 38 Pa. Superior Ct. 292; see, also Snyder's Case, 301 Pa. 276, 152 A. 33."

In *Dauphin County Grand Jury Investigation (No.
3)*, 332 Pa., supra, Mr. Justice (later Chief Justice)
STERN said (pages 362-363): ". . . And, while it is
true that district attorneys are constitutional officers
(Constitution, Article XIV, section 1), it is well es-
tablished that since the Constitution does not prescribe
the duties of the district attorney the legislature may
regulate the performance of such duties and provide
for cases in which it would be improper for the elected
officer to act: Commonwealth v. McHale, 97 Pa. 397,
406; Commonwealth v. Havrilla, 38 Pa. Superior Ct.
292, 295; Commonwealth v. Lehman, 309 Pa. 486, 491,
492."

A contention similar to the position taken by the
majority in this case was made in *Commonwealth v.
Havrilla*, 38 Pa. Superior Ct., supra. In that case the
Court dismissed a motion to quash the indictment be-
cause it was signed by a special district attorney who
had been appointed by the attorney general to super-
sede the elected district attorney. This supersession was
authorized by the Act of May 2, 1905, and it was un-
successfully contended that this Act was unconstitu-
tional. The Superior Court said (page 295): "It is
claimed that as the district attorney is a constitution-
al officer this act deprives him of his power. The ar-
gument presents the distinction between elected and
appointed officers and contends that elective officers
can only be removed by the governor for reasonable
cause after due notice and full hearing on the address
of two-thirds of the senate, and that because the dis-
trict attorney is recognized in the constitution as a
county officer his duties may not be controlled by the
legislature. This view of the case overlooks the fact,
however, that the constitution does not prescribe the
duties of the district attorney. The legislature may
not abolish the office, *but it may regulate the method*

*of its administration.* Cases may arise where by reason of personal interest or relationship or other sufficient consideration it would be highly improper for the district attorney to act. This has been taken notice of by the legislature and provision made for conducting the prosecution in such cases. This does not violate any right of the district attorney, nor impinge against any provision of the constitution. Such was the decision in Commonwealth v. McHale, 97 Pa. 397."

Not only do the aforesaid cases refute the position taken by the majority opinion, but the statutes of Pennsylvania disclose that the legislature has regulated or prescribed in more than a score of ways the powers, duties and limitations of a district attorney. Under the theory of the majority opinion, the legislature either could not enact any laws prescribing or regulating the powers, duties and limitations of a district attorney because of the fact that he is a constitutional officer, or the legislature could not investigate any actions or conduct of district attorneys even for the purpose of legislation. It seems absolutely clear to me that if the legislature has a right to legislate on a subject it has a right to investigate that subject, and if it has, as we have seen it does have, the right to legislate with respect to the powers, privileges and duties of a district attorney it necessarily follows that in the interest and for the purpose of wise legislation and good government it possesses and must possess the inherent basic fundamental right of investigation.

To pile Pelion on Ossa, there are additional authorities which by analogy and necessary implication support the right and power of a legislature to investigate a district attorney.

In *Commonwealth ex rel. Minerd v. Margiotti,* 325 Pa. 17, 188 A. 524, Mr. Justice (later Chief Justice) SCHAFFER, speaking for a unanimous court, said

(pages 30-31) : "We conclude from the review of decided cases and historical and other authorities that the Attorney General of Pennsylvania is clothed with the powers and attributes which enveloped Attorneys General at common law, including *the right to investigate criminal acts,* to institute proceedings in the several counties of the Commonwealth, to sign indictments, to appear before the grand jury and submit testimony, to appear in court and to try criminal cases on the Commonwealth's behalf, and, *in any and all these activities to supersede and set aside the district attorney* when in the Attorney General's judgment [reasonably exercised] such action may be necessary."

This decision and opinion was cited and quoted with approval in *Dauphin County Grand Jury Investigation (No. 1),* 332 Pa. 289, 298, 2 A. 2d 783 (opinion by Mr. Chief Justice KEPHART) ; *Dauphin County Grand Jury Investigation (No. 3),* 332 Pa. 358, 362, 2 A. 2d 809 (opinion by Mr. Justice STERN) ; *Margiotti Appeal,* 365 Pa. 330, 332, 75 A. 2d 465; *Commonwealth ex rel. Margiotti v. Orsini,* 368 Pa. 259, 262, 81 A. 2d 891; *Commonwealth v. Fudeman,* 396 Pa. 236, 238, 152 A. 2d 428.*

Since the authorities have iterated and reiterated that an attorney general, who is only an appointed state officer, can investigate a district attorney's (a) failure to act in the performance of his duties, and (b) his duties and his actions and his conduct as district attorney, it seems to clearly follow that the legislature, which we repeat is one of the three great branches of our Government, and far superior to an attorney general, would likewise have the right and

---

* Mr. Justice MUSMANNO in his dissenting opinion in *Commonwealth v. Fudeman,* 396 Pa., also recognized the right of the legislature to legislate with respect to a district attorney and even to provide for his supersession. See pages 260 and 261.

power to investigate a district attorney's actions and alleged failure to act for the purpose of considering appropriate legislation.

For the aforesaid reasons I would sustain the Senate resolution and a proper investigation conducted thereunder, and I would vacate the decree entered by the lower Court and dismiss plaintiff's bill of complaint.