**Egan v. Ritter**

*Joseph Egan* and *Connie Lee Egan,* pro se.
*Howland W. Abramson,* for defendant.

BIESTER JR., *J.*, September 24, 1987 — This is a case brought by plaintiffs pro se against Catherine Ritter, a district justice in Pennsylvania District Court 1-1. The matter is before this court pursuant to preliminary objections in the nature of a motion to dismiss filed by defendant in which she raises the defense of judicial immunity. We have received memoranda of law and have held oral argument and now enter this opinion and order.

The complaint to which the motion to dismiss is filed recites the following circumstances:

(1) Plaintiffs Joseph and Connie Lee Egan are both married adult individuals residing at 2527 Arrowhead Drive, Langhorne, Pa., 19047.

(2) Defendant Catherine Ritter is an adult individual holding the position of district justice of District Court 1-1 located at 2356 Galloway Road, Bensalem, Pa., 19020.

(3) On or about June 10, 1985, Catherine Ritter wrongfully accepted petition for lawsuit from one Joseph McGinley against Connie Lee Egan to District Court 1-1, which was not proper venue.

(4) On September 18, Connie Lee Egan appeared at District Court 1-1 for scheduled hearing whereas Joseph McGinley failed to appear. Plaintiff requested Catherine Ritter to dismiss due to Mr. McGinley's failure to appear, but she refused, stating she would re-notify parties of a new date.

(5) In or about the month of November a hearing was held and defendant wrongfully placed judgment against Connie Lee Egan, reasons being (a)

case was not heard in proper venue, and (b) Connie Lee Egan was never notified of said hearing.

(6) On or about December 7, 1985, plaintiff was notified of said judgment and contacted defendant regarding same, at which time defendant acknowledged (a) said case was not in defendant's jurisdiction, (b) proof of service was never received in District 1-1, and (c) that judgment against Connie Lee Egan was indeed wrongfully placed, however defendant at this time refused to resolve mistakes which took place in District Court 1-1 caused by defendant's wrongful acts.

(7) On or about January 10, 1986, defendant signed petition and placed judgment notice against property of plaintiff.

(8) Wherefore plaintiffs Joseph and Connie Lee Egan incurred legal expenses in the amount of $845, plus numerous hours of lost time from work to proceed through Bucks County court to have said judgment removed, said lost time for work to Joseph Egan totalling $238.

(9) On or about January 28, 1986, plaintiffs incurred additional loss of $700 when forced to cancel sale of plaintiff Connie Lee Egan's property held in judgment by defendant.

(10) Plaintiff Connie Lee Egan found it necessary, after counseling and on advice of psychologist, to leave place of employment, as severe stress caused by defendant's wrongful acts and subsequent refusal to correct same rendered plaintiff unable to deal with situations at work, resulting in numerous injuries to plaintiff; therefore, plaintiff demands judgment against defendant in the amount of $10,000 to compensate lost wages.

Wherefore, plaintiffs demand judgment against defendant in the amount of $11,783.16 plus interest and all costs of litigation, an amount not in excess of

$20,000 thereby requiring arbitration under local rules of court.

In considering a motion to dismiss, we must assume the truthfulness of all facts which have been well pleaded. We bear in mind that the Egans have filed a pro se complaint and our courts have noted that "the allegations of a pro se complaint . . . are held to a less stringent standard than that applied to the formal pleadings drafted by attorneys." *Reider v. Comm. Bureau of Corrections,* 93 Pa. Commw. 326, 502 A.2d 272, 273 (1985).

In *Praisner v. Stocker,* 313 Pa.Super. 332, 459 A.2d 1255 (1983) our Superior Court considered a case involving questioned judicial immunity for a district justice. That case arose out of the issuing of a criminal complaint charging Mr. Praisner with issuing bad checks. The complaint was dismissed and then Praisner filed a complaint in trespass against District Justice Olive S. Stocker who was apparently the issuing authority for the criminal complaint alleging causes of action for false arrest, malicious abuse of process and also assault and battery. Although neither the trial court nor the Superior Court found judicial immunity for assault and battery, both found judicial immunity for the actions for false arrest and malicious abuse of process. The language of the Superior Court is quite sweeping: "Judges are absolutely immune from liability of damages when performing judicial acts, even if their actions are in error or performed with malice." Id. at 1261.

The court cites *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) reh'ng denied, 436 U.S. 951, 98 S.Ct. 2862 56 L.Ed.2d 795 (1978). In that case the basis for the alleged judicial misconduct was approval of a sterilization petition by defendant judge. That judge had approved the

petition for sterilization even though it was not given a docket number, nor was it placed in the clerk's office. The petition was entirely approved in an ex parte proceeding. Furthermore, the minor who was sterilized was not afforded notice, nor was she given a hearing prior to the sterilization, nor was a guardian ad litem appointed on the minor's behalf.

The United States Supreme Court held that notwithstanding both the procedural errors committed by the judge in the performance of his judicial duties and the resulting unfairness to the litigant, the judge was still afforded the protection of judicial immunity. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he acted in the 'clear absence of all jurisdiction.' " *Stump v. Sparkman,* supra, at 356-357, citing *Bradley v. Fisher,* 13 Wall. 335 (1872) .

In *Hanna v. Slevin,* 8 Pa. Super. 509 (1898) the Superior Court held that the general rule both in the United States and in England is that justices of the peace while acting within the scope of their authority are not answerable in damages for the merely erroneous exercise of purely judicial functions.

In the case of *Com. v. Cauffiel,* 79 Pa. Super. 596 (1922) the Superior Court adopted the following language:

"A judicial officer is not liable for acts done in his judicial capacity where there is not a clear absence of all jurisdiction over the subject matter and person, even though such acts constitute an excessive exercise of jurisdiction or involve a decision that the official had jurisdiction over the particular case, where in fact he had none. . . . The principle involved is that all judicial officers are protected by their official character from liability in tort, because

of public conduct clearly within the pale of their authority, although involving demonstrable legal error." Id. at 600.

The court in *Praisner v. Stocker*, supra, went on with additional language to the following effect:

"Judicial immunity extends to all judicial officers, including district justices. 'If a judge of an inferior jurisdiction has the power under authority of law to hear and pass on cases, to which the particular offense belongs, the same reason requires that he should be protected from liability for erroneous action, which exempts judges of superior or general jurisdiction from such liability. If judges properly expected to be most learned in the law can plead official exemption for their blunderings in the law, a fortiori those from whom less is expected should not be compelled to respond in damages for their mistakes honestly made.' " *McNair's Petition*, 324 Pa. 48, 55-56, 187 Atl. 498, 502 (1936), quoting *Commonwealth v. Cauffiel*, supra, at 600-01. Accord: *Petition of Dwyer*, 486 Pa. 585, 590-591, 406 A.2d 1355, 1358 (1979); *Hanna v. Slevin*, 8 Pa. Super. 509, 510 (1898).

"Judicial immunity insures 'the *independence* of the magistrates so that they may be free to exercise their discretion and apply their understanding of the law, whether correct or erroneous, to the facts and circumstances presented to them. . . .' *Petition of Dwyer*, supra, 486 Pa. at 591, 406 A.2d at 1358. (emphasis in original). Thus, there can be no cause of action and no recovery of damages against a district justice who accepts and processes a criminal complaint even though a careful examination of the evidence may have revealed, as appellant contends that there was no probable cause for the criminal charges against him. See *Huendling v. Jensen*, 168 N.W. 2d 745 (Iowa, 1969). Similarly, there can

be no recovery of damages in a civil action against a district justice who temporarily detains in his or her office or courtroom a person against whom a criminal complaint has been filed. See and compare, *Burgess v. Towne,* 13 Wash. App. 954, 538 P. 2d 559 (1975)." *Praisner v. Stocker,* supra, at 1255.

In the instant case the district justice had jurisdiction over the subject matter since the amount of the claim was well within the $4,000 limit of her jurisdiction.

Although we do not find that the issue of venue in this case bears directly upon the issue of judicial immunity, we shall discuss it briefly because the issue was raised by plaintiffs.

As was previously discussed, the test for determining whether judicial immunity is available is whether jurisdiction existed in the given case. Jurisdiction should not be confused with venue. "Venue and jurisdiction are two distinct and different concepts, and an objection raising questions of improper venue should not be construed as raising questions of lack of jursidiction." *Encelewski v. Associated-East Mortg. Co.,* 262 Pa. Super. 205, 396 A.2d 717, 719 (1978).

Our courts have defined venue as "the right of the party sued to have the action brought and heard in a particular judicial district." *McGinley v. Scott,* 401 Pa. 310, 164 A.2d 424, 428 (1960); see also; In re *Estate of R.L.L.,* 487 Pa. 223, 409 A.2d 321, 322 N.3 (1979). Further, "venue, unlike jurisdiction, [is] a matter of procedure, and not substance." *McGinley v. Scott,* supra, at 428.

We have carefully analyzed the complaint including that paragraph which recites defendant's refusal to resolve mistakes made in her court. We find that the sweeping language of our appellate courts regarding the issue of judicial immunity indicates

the application of the doctrine as the general rule, rather than the exception. The doctrine of judicial immunity applies even if the actions of a judge are in error or performed with malice. Furthermore, judicial immunity is granted "even though such acts constitute an excessive exercise of jurisdiction or involve a decision that the official had jurisdiction over the particular case where, in fact, he had none." *Commonwealth v. Cauffiel,* supra, at 600. The application of the judicial immunity doctrine is so broad as to cover even the conduct alleged in plaintiffs' complaint in this case. We believe, therefore, after careful analysis of the cases and giving these pro se plaintiffs a liberal reading of their complaint, that we have no choice but to sustain the preliminary objections in the nature of a motion to dismiss and therefore we enter the following

### ORDER

And now, this September 24, 1987, the preliminary objections in the nature of a motion to dismiss are sustained.