635 A.2d 1113

COMMON CAUSE/PENNSYLVANIA, a non-profit corporation, and Pennsylvania Leadership Council, a non-profit corporation, Petitioners,

v.

Ivan ITKIN, Fred Belardi, Jeffrey Coy, Dwight Evans, Camille George, Mark Cohen, Michael Veon, H. William DeWeese, William Reiger, Matthew Ryan, John Perzel, Richard Geist, John Barley, Roy Cornell, Howard Fargo, Joseph Pitts, Joseph Stesighner, John J. Zubeck, and Catherine Baker Knoll, Harrisburg, Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1993,

Decided Dec. 28, 1993.

Samuel E. Klein, for petitioners.

C. Clark Hodgson, Jr., for respondent, House of Representatives.

Michael W. Arpey, for respondent, Catherine Baker Knoll.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, SMITH, PELLEGRINI and FRIEDMAN, JJ.

DOYLE, Judge.

Before us in our original jurisdiction are the preliminary objections of Ivan Itkin, Fred Belardi, Jeffrey Coy, Dwight Evans, Camille George, Mark Cohen, Michael Veon, H. William DeWeese, William Reiger, Matthew Ryan, John Perzel, Richard Geist, John Barley, Roy Cornell, Howard Fargo, Joseph Pitts, and Joseph Stesighner, who comprise the Rules Committee of the Pennsylvania House of Representatives, and John Zubeck, Chief Clerk of the House of Representatives,[1] which were filed in response to the complaint in equity filed by Common Cause[2] and the Pennsylvania Leadership Council[3] (collectively referred to as Common Cause).

The background facts are as follows. On March 17, 1993, the House of Representatives adopted Resolution, H.R. 37, Printer's No. 662, which, *inter alia*, directed the Rules Committee to amend the "Expense Account Guidelines" pertaining to per diems, transportation expenses, and air travel expenses of House Members. On April 21, 1993, in accordance with

1. In addition to the Legislators and Zubeck, Common Cause named Catherine Baker Knoll, Pennsylvania's State Treasurer, as a defendant.

2. As pled, Common Cause in Pennsylvania is a 15,000 member branch of a national citizen advocacy organization concerned with advancing integrity in government.

3. As pled, the Pennsylvania Leadership Council is an advocacy organization committed to the policy of fiscal reform in the Commonwealth.

H.R. 37, the Rules Committee met and amended the guide-lines pursuant to the House Resolution.

On May 20, 1993, Common Cause filed its complaint[4] with this Court averring that the Rules Committee violated the Sunshine Act[5] (Act) by improperly conducting a meeting on the issue of per diem allowances allotted to Members of the House. Specifically, Common Cause avers in its complaint that, on April 21, 1993, without giving notice to the public, the Rules Committee conducted a "secret meeting" and, at said meeting, deliberated on H.R. 37 and took official action to increase the per diem allowances. Common Cause asserts that the Rules Committee was required, under Sections 4 and 9 of the Act, 65 P.S. § 274 and § 279, to give advance notice of the meeting and to open the meeting to the public. Because of the alleged violations of the Act, Common Cause asked this Court to grant a preliminary and a permanent injunction prohibiting the increase in the per diem allowance, and to declare the increase in the per diem invalid.

Thereafter, the Members of the Rules Committee and John Zubeck filed preliminary objections in the nature of a demur-rer to Common Cause's complaint, asserting that the complaint should be dismissed because: (1) they are protected by Article II, Section 15 of the Pennsylvania Constitution, the Speech and Debate Clause; (2) the protection afforded by Article II, Section 15 of the Pennsylvania Constitution was not altered by the enactment of the Sunshine Act; (3) the cause of action is non-justiciable under Article II, Section 11 of the Pennsylvania Constitution; and (4) the meeting of the Rules Committee in question was not covered by the Sunshine Act because that meeting did not involve the deliberation of agen-cy business or official action.

4. The initial pleading, designated a complaint in equity, should have been more properly designated a "petition for review," but for all practical purposes it is the equivalent of a complaint under the Pennsyl-vania Rules of Civil Procedure and will thus be referred to as a complaint in equity. See Pa.R.A.P. 1511–1517.

5. Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

While the preliminary objections were pending, this Court held a hearing on whether or not a preliminary injunction should be granted. We denied the request of Common Cause for a preliminary injunction on the basis that there were not sufficiently clear legal grounds in the record for granting such an injunction. In the order denying Common Cause's preliminary injunction, we further directed the parties to argue the issues presented by the preliminary objections before this Court en banc.[6]

We first acknowledge the basic principles of law which guide us generally in addressing the issues raised by Common Cause, since a demurrer is an assertion that the complaint does not set forth a cause of action or a claim on which relief can be granted. *David v. Secretary of Department of Public Welfare,* 143 Pa.Commonwealth Ct. 161, 598 A.2d 642 (1991). "A court should sustain preliminary objections in the nature of a demurrer only where the law provides with certainty that no recovery is possible, and the complaint is clearly insufficient to establish any right to relief." *Pennsylvania Legislative Correspondent's Ass'n. v. Senate of Pennsylvania,* 113 Pa.Commonwealth Ct. 367, 370, 537 A.2d 96, 97, *affirmed,* 520 Pa. 82, 551 A.2d 211 (1988). Furthermore, a demurrer admits as true all well pled material facts as well as all inferences reasonably deductible from those facts; however, a demurrer does not admit conclusions of law. *Snyder v. City of Philadelphia,* 129 Pa. Commonwealth Ct. 89, 564 A.2d 1036 (1989).

We address first the preliminary objection asserting that the complaint fails to state a cause of action under the Sunshine Act, and find that the resolution of that issue is dispositive of this case, because the meeting of the Rules Committee was not within the purview of the Act. "[W]here both constitutional and non-constitutional issues are raised, a court should not decide constitutional questions if the complaint can be resolved on non-constitutional grounds." *Ballou*

---

**6.** In the same order entered on June 29, 1993, we also denied the motions of Zubeck and Knoll, requesting that they be dismissed as party respondents in this case.

*v. State Ethics Commission*, 496 Pa. 127, 129, 436 A.2d 186, 187 (1981).

The Sunshine Act was enacted by the General Assembly with the following declaration of public policy:

> The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decision making of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society.

Section 2 of the Act, 65 P.S. § 272. However, the General Assembly implemented this broad general policy with the specific sections of the Act which follow Section 2, the most pertinent of which are here noted:

### Section 3.  Definitions

"**Agency.**"  The body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all the following: the General Assembly, . . . .  The term does not include a caucus nor a meeting of an ethics committee created under rules of the Senate or House of Representatives.

. . . .

"**Deliberation.**"  The discussion of agency business held for the purpose of making a decision.

. . . .

"**Meeting.**"  Any prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action.

"**Official action.**"

(1) Recommendations made by an agency pursuant to statute, ordinance or executive order.

(2) The establishment of policy by an agency.

(3) The decisions on agency business made by an agency.

(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 P.S. § 273.

### Section 12. General Assembly meetings covered

Notwithstanding any other provision, for the purpose of this act, meetings of the General Assembly which are covered are as follows: All meetings of committees where bills are considered, all hearings where testimony is taken and all sessions of the Senate and the House of Representatives. Not included in the intent of this act are caucuses or meetings of any ethics committee created pursuant to the Rules of the Senate or the House of Representatives.

65 P.S. § 282.

Thus it can be observed by focusing first on Section 3 of the Act, and the general definition of an "agency" which by specific reference includes the General Assembly, only caucus meetings and ethics committee meetings of the House would be *excluded* from the purview of the Act. All other meetings, by inference, would be *included.*

However, by further reference to Section 12, which pertains exclusively to the General Assembly, we note that only three types of meetings of the General Assembly are specifically *included* under the coverage of the Act, *viz.*, (1) where bills are considered, or (2) where testimony is taken, or (3) which are general sessions of the entire House. Specifically excluded again, are caucus meetings and meetings of the ethics committee.

We are thus faced with a lacuna that must be filled by judicial application of principles of statutory interpretation.

Common Cause argues that both Section 3 and Section 12 of the Act apply to the General Assembly and we should not determine whether the meeting in question was covered solely on the basis of Section 12. They reason that the Sunshine Act must be read as a whole and that Section 12 is not a limitation as it applies to the General Assembly, but can only be read to *add* instances where the Act applies, and rely upon *Consumer Education and Protective Ass'n. v. Nolan,* 470 Pa. 372, 368

A.2d 675 (1977), and *Pennsylvania Legislative Correspondents' Ass'n.*

The Rules Committee and Zubeck argue on the other hand, that in order to determine whether the meeting in question was required to be open to the public under the Sunshine Act and notice given, we need only look to Section 12 of the Act which clearly would exclude this meeting from the requirements of the Act since no bills were considered, no testimony was taken, and it was not, obviously, a general session of the House.

Proceeding to divine legislative intent, we find that while the terms "agency" and "meeting" are very broadly defined in the generic definitions in Section 3 of the Act, and are applicable to the General Assembly and the Rules Committee generally, those sections are constricted by the narrower definition of the term "meeting" in Section 12 of the Act which deals expressly with "General Assembly meetings covered." Section 12 of the Act clearly and unambiguously describes what meetings of the General Assembly are covered under the Sunshine Act, limiting the applicability of the Act to committee meetings where bills are considered, hearings where testimony is taken, and to the general sessions of the Senate and House of Representatives. And, of critical consequence, Section 12 explicitly states that it applies *"notwithstanding any other provision"* of the Sunshine Act. Therefore, by its very terms, even if there was a direct conflict between the two, Section 12 would be paramount.

■ Where the words of a statute are clear and free of ambiguity, we must follow the letter of the statute; we may not disregard the plain words of a statute under the pretext of pursuing its spirit, however laudable, even as evidenced by the enlightened statement of policy found in Section 2 of the Act. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921; *Borough of Glendon v. Department of Environmental Resources,* 145 Pa.Commonwealth Ct. 238, 603 A.2d 226, *petition for allowance of appeal denied,* 530 Pa. 657, 608 A.2d 32 (1992). The language of Section 12 of the Act is

crystal clear and free of ambiguity—Section 12 applies notwithstanding *any* other provision of the Sunshine Act, which must include, of course, any contrary or conflicting definition in Section 3.

In *Borough of West Chester v. Taxpayers,* 129 Commonwealth Ct. 545, 566 A.2d 373 (1989), we held that Section 533 of the Local Tax Reform Act (Tax Act),[7] which contained language stating that it applied notwithstanding any other provision of the Tax Act, prevailed over conflicting sections of that same act. In Section 533 of the Tax Act, the General Assembly revoked the authority of political subdivisions to enact a mercantile tax after November 30, 1988. That section conflicted with Sections 3110 and 3112 of the Tax Act,[8] which stated that the Tax Act would not go into effect until twelve months after a constitutional amendment was certified. Because the amendment was never certified as required by Section 3110 and 3112, the appellant in *West Chester* argued that Section 533 of the Tax Act never went into effect. This Court rejected appellant's argument, because Section 533(a) specifically stated that it applied "notwithstanding any other provisions of this Act" and, therefore, applied regardless of the existence of conflicting provisions in the statute. *Accord Burrell School District v. Lower Burrell,* 147 Pa.Commonwealth Ct. 471, 608 A.2d 605, *petition for allowance of appeal denied,* 533 Pa. 602, 617 A.2d 1275 (1992).

■ In light of the above, therefore, we hold that Section 12 of the Act applies, by its own terms, notwithstanding any other provision of the Sunshine Act, and the narrower language of Section 12 controls, regardless of the fact that the broad scope of the definitions of "agency" and "meeting" in Section 3 of the Act potentially encompass a larger number of activities of the General Assembly.

■ Applying Section 12 of the Act to the present case, in order to assert a cause of action under the Sunshine Act against the Rules Committee and Zubeck, Common Cause had

7. Act of December 13, 1988, P.L. 1121, 72 P.S. § 4750.533.

8. 72 P.S. § 4750.3110 and § 4750.3112.

to aver sufficient facts in its complaint to show that the meeting of the Rules Committee in question was a meeting where bills were considered. Of course, a bill is the draft of an act presented to the General Assembly for enactment into law. *McGinley v. Scott*, 401 Pa. 310, 164 A.2d 424 (1960); *West Shore School District v. Pennsylvania Labor Relations Board*, 131 Pa.Commonwealth Ct. 476, 570 A.2d 1354 (1990), *affirmed*, 534 Pa. 164, 626 A.2d 1131 (1993). Bills propose new statutes or amendments to existing laws. 101 Pa.Code § 9.1. Single House resolutions, on the other hand, are a mechanism for carrying out the business of one chamber of the legislature. 101 Pa.Code § 9.42; *West Shore School District*. Resolutions are used in situations where bills are inappropriate. 101 Pa.Code § 9.1.

Counsel for Common Cause admitted at oral argument that no bills were considered by the Rules Committee during the meeting here at issue. But, even if Common Cause had not conceded that point, Common Cause averred in its complaint that the Committee Members deliberated only House Resolution 37, and voted to approve an increase in House members per diems. Those averments are insufficient to state a cause of action under the Act. Therefore, because Common Cause did not aver sufficient facts to show that the Rules Committee held a meeting which was covered under the Sunshine Act, we are obliged to find that it has failed to state a claim against the Committee and Zubeck.[9]

9. Our decision in this case is in accord with *Nolan*. In that case, our Supreme Court considered whether a committee meeting where an executive nomination was deliberated was covered by Section 7 of the former Sunshine Law, Act of July 19, 1974, P.L. 468, *formerly*, 65 P.S. § 267. Section 7 of the former Sunshine Law, like Section 12 of the present Sunshine Act, stated that only those legislative committee meetings where "bills are considered" and "hearings where testimony is taken" were covered by that act. In light of that language, the Supreme Court held that a committee meeting where an executive nomination was considered was not covered by the Sunshine Law. The *Nolan* court reasoned that the language of Section 7 showed that the General Assembly intended the Sunshine Law to open legislative committee meetings that involved policy making activities, *i.e.*, deliberations on pending legislation and hearings on proposed legislation. In our Supreme Court's view, a meeting where a committee considers an

Further, even assuming *arguendo* that the meeting of the Rules Committee at issue was covered by the Sunshine Act, we would have concluded that the failure of the Rules Committee to hold a public meeting, under the particular facts of this case, did not violate the Act. In H.R. 37, the House of Representatives, in a general session, which is by definition a public meeting, directed the Rules Committee to amend the expense account rules of the House involving per diems to accomplish the following:

(I) PER DIEMS

. . . .

(C) (1) MEMBERS ARE ELIGIBLE FOR THE MAXIMUM ALLOWABLE PER DIEM AUTHORIZED BY THE RULES COMMITTEE ONLY ON THE FOLLOWING DAYS:

(I) OVERNIGHT STAYS;

(II) LEGISLATIVE DAYS;

(III) COMMITTEE DAYS;

(IV) DAYS ON WHICH THE LEGISLATOR ATTENDS A MEETING OF A BOARD OR COMMISSION OF WHICH THE LEGISLATOR IS A MEMBER OR DESIGNEE ...; OR

(V) THE DAY FOLLOWING THE LAST LEGISLATIVE DAY OF THE WEEK.

(2) EXCEPT AS OTHERWISE PROVIDED IN PARAGRAPH (1), *A MEMBER IS ELIGIBLE ONLY FOR ACTUAL EXPENSES OR THE INTERNAL REVENUE SERVICE SUBSISTENCE ALLOWANCE.* (Emphasis added.)

In accordance with the direction of the entire House, as articulated in H.R. 37, the Rules Committee amended the expense account guidelines as follows:

Members are eligible for per diem at the maximum allowable federal travel rate ... for the location of travel, only on the following days:

executive nomination was distinctly different from the policy making meetings explicitly covered by Section 7 of the old Sunshine Law.

(1)

    (I) Overnight Stays;

    (II) Legislative Days;

    (III) Committee Days;

    (IV) Days on which the legislator attends a meeting of a board or commission of which the legislator is a member . . .;

    (V) The day following the last legislative day of the week.

(2) Except as otherwise provided in paragraph (1) above, *a member is eligible only for actual expenses or the Internal Revenue Service subsistence allowance for the location of travel.*[10]  (Emphasis added.)

. . . .

■ A comparison of the relevant language in H.R. 37 to the action of the Rules Committee clearly shows that the Rules Committee merely revised the expense guidelines in strict accord with H.R. 37, even parroting the same language as was employed in H.R. 37. If the per diem rate of Members of the House was raised to $110.00 (for Harrisburg), it was accomplished as a matter of policy when H.R. 37 was adopted by the vote of the entire membership of the House in general session on March 17, 1993. The revision of the expense guidelines did not result in any fresh deliberation or decision on the part of the Rules Committee which would constitute "agency business" or "official action" within the scope of Section 3 of the Act, but was, instead, a ministerial action by which the Rules Committee executed a resolution of the House of Representatives. A meeting where an agency does not engage in "official action," is not required to be open to the public under the Sunshine Act. Section 4 of the Act, 65 P.S.

10. The Internal Revenue Service determines the maximum per diem rate for travel to locations within the continental United States by referring to the federal employee travel rates found at 41 C.F.R. § 301, App. A. With regard to locations in the Commonwealth, 41 C.F.R. § 301, App. A, establishes the following maximum per diem rates: Harrisburg, $110.00; Pittsburgh, $109.00; and Philadelphia, $123.00. The above rates reflect the estimated subsistence expenses for each location which includes the cost of lodging, meals, and incidental expenses. 41 C.F.R. § 301–7.1.

§ 274. The deliberation and vote of the entire House on March 17, 1993 was open to the public and, we would have to assume, was covered by the news media. While H.R. 37 did not say "raise the expense per diems in Harrisburg to $110.00," the Resolution accomplished that result just as surely as the action of the Rules Committee did subsequently on April 21, 1993, when the Committee changed the House Rules, exactly as instructed. Hence, the Rules Committee's failure to open the meeting in question to the public did not violate the Sunshine Act.

Accordingly, the preliminary objection raised by the Rules Committee and Zubeck asserting that Common Cause's complaint fails to state a cause of action under the Sunshine Act is sustained and Common Cause's complaint is hereby dismissed with prejudice.[11]

## ORDER

NOW, December 28, 1993, the preliminary objection in the above-captioned matter asserting that the Petition for Review failed to state a cause of action under the Sunshine Act is sustained with prejudice. The Petition in the above-captioned matter is hereby dismissed.

---

11. Because of our disposition of this matter, we need not consider the remaining preliminary objections. Moreover, the issue of whether Knoll or Zubeck should be dismissed from this suit is rendered moot by our decision to sustain the demurrer and dismiss the complaint in its entirety.