J-S24005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY G. WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1515 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 23, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013658-2013

BEFORE:   BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 26, 2020**

Appellant, Anthony G. Williams, appeals *nunc pro tunc* from the judgment of sentence of 4 to 8 years' incarceration, followed by two years' probation, imposed after a jury convicted him of sexual assault (18 Pa.C.S. § 3124.1) and indecent assault of an unconscious person (18 Pa.C.S. § 3126(a)(4)).  After careful review, we affirm.

The trial court summarized the facts underlying Appellant's convictions, as follows:

> On July 26, 2013, the complainant, S.S., and her friend, C.C., went to the Millcreek Tavern located on 52nd [Street] and Wyalusing Avenue in Philadelphia to celebrate S.S.'s birthday. From around 10:00 p.m. until midnight, S.S. and C.C. sat at the bar drinking and talking.  S.S. consumed approximately five double shots of tequila.  At some point, S.S. noticed [Appellant], a friend of her children's father, in the bar.  [Appellant] approached S.S., and they began talking.  C.C. left the bar around

_____

[*] Retired Senior Judge assigned to the Superior Court.

midnight. [Appellant] bought S.S. another tequila drink, and they remained at the bar together for about another hour. Notes of Testimony ("N.T."), 6/28/2016[,] at 32-37, 55-56.

S.S. asked [Appellant] if they could go to another bar, but he told her she was drunk and needed to go home. S.S. felt "woozy" and "sleepy" when she left the bar. [Appellant] placed his arm around S.S.'s back, and they got into [Appellant]'s car. S.S. then fell asleep. When S.S. awoke, she was walking up a flight of stairs in what she assumed was her own home. They proceeded to the back room where [Appellant] pushed S.S. onto the bed from behind. S.S. again fell asleep. At some point, she felt her clothing being removed. S.S. then felt [Appellant] on top of her with his penis inside of her vagina. She was unable to speak or move. *Id.* at 37-43.

While it was still dark outside, S.S. got back into the car with [Appellant] and told him to drop her off at her children's father's house. When she arrived at the house, she began crying and told her children's father that she had been raped. S.S. then went to sleep and woke up around 10:45 a.m. It was at this point that she disclosed who had assaulted her. S.S. also noticed that her underwear was tucked inside of her bra, and that she was wearing her tights inside out. Later in the afternoon on July 27, 2013, S.S. provided a statement to police. *Id.* at 43-47, 63.

Trial Court Opinion (TCO), 10/17/19, at 1-2 (footnote omitted).

Appellant was arrested and charged with the above-stated offenses, as well as rape. At the close of his jury trial, he was convicted of sexual assault and indecent assault of an unconscious person, but acquitted of the rape charge. The court ordered a presentence investigation report and an evaluation by the Sexual Offenders Assessment Board, which determined Appellant was not a sexually violent predator. On November 23, 2016, the court sentenced Appellant as set forth *supra*. He did not file a timely direct appeal. However, Appellant later filed a petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, seeking the restoration of his right to

appeal. The court granted that petition, and Appellant timely filed this *nunc pro tunc* appeal. He also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court thereafter filed its Rule 1925(a) opinion. The court also filed an amended opinion on November 27, 2019.

Herein, Appellant states three issues for our review:

1. Whether there was sufficient evidence presented to establish the jurisdiction of the trial court without proof that the alleged crime occurred within the city and county of Philadelphia[?]

2. Whether there was sufficient evidence presented to establish each and every element of the crimes of sexual assault and indecent assault of an unconscious person[?]

3. Whether the trial court imposed an illegal sentence in excess of the statutory maximum by imposing a lifetime registration requirement upon [A]ppellant[?]

Appellant's Brief at 7.

Appellant first contends that "the jurisdiction of the trial court was not established" because "the Commonwealth failed to present evidence to prove that the alleged crimes occurred within the geographic boundaries of the city and county of Philadelphia." *Id.* at 11 (emphasis omitted). Initially, the Commonwealth argues, and we agree, that Appellant incorrectly frames his argument as a challenge to the court's jurisdiction, when it actually implicates the venue of his prosecution. *See* Commonwealth's Brief at 6. In *Commonwealth v. Bethea*, 828 A.2d 1066 (Pa. 2003), our Supreme Court explained:

Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. ***McGinley v. Scott***, … 164 A.2d 424 (Pa. 1960). Jurisdiction is a matter of substantive law. ***Id.*** at 428; 42 Pa.C.S. § 931(a) (defining the unlimited original jurisdiction of the courts of common pleas). … Controversies arising out of violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution. ***See*** 18 Pa.C.S. § 102. Every jurist within that tier of the unified judicial system is competent to hear and decide a matter arising out of the Crimes Code. Pa. Const. Art. 5, § 5 (establishing the jurisdiction of the courts of common pleas within the unified judicial system).

Venue relates to the right of a party to have the controversy brought and heard in a particular judicial district. ***McGinley***, 164 A.2d at 427–28. Venue is predominately a procedural matter, generally prescribed by rules of this Court. ***Id.*** at 429; 42 Pa.C.S. § 931(c). Venue assumes the existence of jurisdiction. 42 Pa.C.S. § 931(b) (referencing rules for change of venue in cases within the jurisdiction of courts of common pleas); Pa.R.Crim.P. 584 (relating to the procedure for a change of venue amongst courts of common pleas for the trial of criminal actions).

***Id.*** at 1074.

We also concur with the Commonwealth's position that Appellant waived his challenge to the venue. As the Commonwealth explains:

While [Appellant] did challenge the trial court's jurisdiction in a post-trial motion for extraordinary relief and in his [Rule] 1925(b) statement, jurisdiction and venue are distinct; a challenge to one does not encompass a challenge to the other. ***Commonwealth v. Fremd***, 860 A.2d 515, 520-21 (Pa. Super. 2004) (holding that a challenge to venue was waived when it was only raised in the lower court as a challenge to jurisdiction).

Commonwealth's Brief at 6-7. At no point before, during, or after trial did Appellant contend that Philadelphia County was not the appropriate venue for his prosecution. Therefore, this issue is waived. ***See*** Pa.R.A.P. 302(a)

("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In any event, even if preserved, we would deem meritless Appellant's challenge to the sufficiency of the evidence to establish that the proper venue for his trial was in Philadelphia County. As the trial court explains:

> At trial, S.S. testified that she and [Appellant] met at the Millcreek Tavern located on 52nd [Street] and Wyalusing Avenue in Philadelphia on the night of July 26, 2013. N.T.[,] 6/28/2016[,] at 32-34. When C.C. left the bar around midnight, [Appellant] offered to give S.S. a ride home. *Id.* at 35, 56. [Appellant] and S.S. remained at the bar for about another hour. *Id.* at 37. They then left the bar together and went to a house S.S. believed was her own home located a block away from the bar. *Id.* at 39-40. Following the assault, while it was still dark outside, [Appellant] dropped S.S. off on the corner of Wilton Street and Haverford Avenue in Philadelphia. *Id.* at 44-45. From there, she walked to her children's father's house located at the end of the block. *Id.* At trial, counsel stipulated that [Appellant's] residence was located in Philadelphia. N.T.[,] 6/29/2016[,] at 11.

> Immediately before sentencing, in response to [Appellant's]'s motion for extraordinary relief, the Commonwealth stated the following:

>> Well, without the benefit of the notes of testimony in this case, I'm just relying on my own recollection and read[ing] the complainant's statement. But the bar was [located] at [52nd Street] and Wyalusing [Avenue,] and that's where they were together in Philadelphia. [Appellant's] home was at 5026 Westminster [Street], which is a couple blocks away. So[,] the jury could conclude that it happened at [Appellant's] home and then he drove her again a few blocks away to … 324 North Wilton Street in Philadelphia. Your Honor, those are all within … point three miles of one another. The city lines are, the closest one I think is City Ave[nue], which is over three miles away.

> N.T.[,] 11/23/2016[,] at 4-5.

Although the Commonwealth did not provide direct proof that the assault took place in the city and county of Philadelphia, the events immediately before and after the assault occurred in Philadelphia. Therefore, there was sufficient circumstantial evidence to establish venue in Philadelphia County. Accordingly, [Appellant's] first claim merits no relief.

Trial Court Amended Opinion, 11/27/19, at 2-3. For the reasons set forth by the trial court, we would agree that Appellant's first issue is meritless, even had he preserved it for our review.

In evaluating Appellant's remaining two issues, we reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we considered the October 17, 2019 opinion of the Honorable Donna M. Woelpper of the Court of Common Pleas of Philadelphia County. We conclude that Judge Woelpper's well-reasoned decision accurately disposes of Appellant's second and third claims. *See* TCO at 5-8. Accordingly, we adopt that portion of Judge Woelpper's opinion as our own, and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/20

- 6 -

FILED

2019 OCT 17 PM 12: 07

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF : CP-51-CR-0013658-2013
PENNSYLVANIA :
  :
  :
v. :
  : SUPERIOR COURT
ANTHONY G. WILLIAMS : 1515 EDA 2019

OPINION

WOELPPER, J.                      OCTOBER 17, 2019

I.     PROCEDURAL & FACTUAL BACKGROUND

On June 30, 2016, a jury convicted Anthony Williams ("Defendant") of sexual assault[1] and indecent assault of an unconscious person.[2] The jury acquitted Defendant of rape.[3] Defendant appeals from his judgment of sentence.

On July 26, 2013, the complainant, S.S., and her friend, C.C., went to the Millcreek Tavern located on 52nd and Wyalusing Avenue in Philadelphia to celebrate S.S.'s birthday. From around 10:00 p.m. until midnight, S.S. and C.C. sat at the bar drinking and talking. S.S. consumed approximately five double shots of tequila. At some point, S.S. noticed Defendant, a friend of her children's father, in the bar. Defendant approached S.S., and they began talking. C.C. left the bar around midnight. Defendant bought S.S. another tequila drink, and they remained at the bar together for about another hour. Notes of Testimony ("N.T."), 6/28/2016 at 32–37, 55–56.

[1] 18 Pa.C.S. § 3124.1.
[2] 18 Pa.C.S. § 3126(a)(4).
[3] 18 Pa.C.S. § 3121(a)(3).

S.S. asked Defendant if they could go to another bar, but he told her she was drunk and needed to go home. S.S. felt "woozy" and "sleepy" when she left the bar. Defendant placed his arm around S.S.'s back, and they got into Defendant's car. S.S. then fell asleep. When S.S. awoke, she was walking up a flight of stairs in what she assumed was her own home. They proceeded to the back room where Defendant pushed S.S. onto the bed from behind. S.S. again fell asleep. At some point, she felt her clothing being removed. S.S. then felt Defendant on top of her with his penis inside of her vagina. She was unable to speak or move. *Id.* at 37–43.

While it was still dark outside, S.S. got back into the car with Defendant and told him to drop her off at her children's father's house. When she arrived at the house, she began crying and told her children's father that she had been raped. S.S. then went to sleep and woke up around 10:45 a.m. It was at this point that she disclosed who had assaulted her. S.S. also noticed that her underwear was tucked inside of her bra, and that she was wearing her tights inside out. Later in the afternoon on July 27, 2013, S.S. provided a statement to police. *Id.* at 43–47, 63.

After the jury rendered their verdict, this Court deferred sentencing for completion of a presentence investigation and a Sexual Offenders Assessment Board ("SOAB") evaluation.[4] On November 22, 2016, Defendant filed a motion for extraordinary relief, seeking a judgment of acquittal due to the Commonwealth's failure to establish jurisdiction. On November 23, 2016, immediately before sentencing Defendant, this Court denied the motion for extraordinary relief. Defendant was then sentenced to a term of four to eight years of incarceration, followed by two years of state supervised sex offender probation. On December 9, 2016, Defendant filed a motion to reconsider the denial of his motion for extraordinary relief. This Court denied Defendant's motion to reconsider as untimely on February 28, 2017. No direct appeal was filed.

---

[4] The SOAB determined that Defendant was not a sexually violent predator.

2

On May 10, 2017, Defendant filed a timely *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"). Court appointed counsel, Lawrence J. O'Connor, Jr. Esq., entered his appearance, and on September 27, 2017, filed an amended petition. The Commonwealth filed a response on February 22, 2018, followed by a supplemental motion to dismiss on July 16, 2018. On September 25, 2018, this Court filed a Rule 907 notice of its intent to dismiss Defendant's petition. On October 26, 2018, Defendant filed a *pro se* motion for an extension of time to respond to the 907 notice.

On January 23, 2019, court appointed counsel filed a motion for leave to file an appeal *nunc pro tunc*. Counsel also filed an amended PCRA petition on January 25, 2019. The Commonwealth filed its response on April 17, 2019, agreeing to the reinstatement of Defendant's direct appellate rights. On April 24, 2019, this Court ordered Defendant's appellate rights reinstated *nunc pro tunc* and dismissed the remaining claims raised in his PCRA without prejudice. Defendant filed a timely notice of appeal to the Superior Court on May 17, 2019. On May 21, 2019, this Court ordered Defendant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. Defendant filed his Rule 1925(b) statement on June 11, 2019.

## II. DISCUSSION

### A. Trial Court Jurisdiction

In his first issue, Defendant claims that the Commonwealth failed to present evidence of where the offense occurred to establish jurisdiction.

"The law is clear that the locus of a crime is always in issue, for the court has no jurisdiction [over] the offense unless it occurred within the county of trial, or unless, by some statute, it need not[.]" *Commonwealth v. Boyle*, 532 A.2d 306, 309 (Pa. 1987) (citation and

3

internal quotation marks omitted). Although the "Commonwealth bears the burden of proving facts sufficient to establish jurisdiction, it may rely upon circumstantial evidence to meet its burden." *Commonwealth v. Bradfield*, 508 A.2d 568, 571 (Pa. Super. 1986) (citation omitted).

At trial, S.S. testified that she and Defendant met at the Millcreek Tavern located on 52nd And Wyalusing Avenue in Philadelphia on the night of July 26, 2013. N.T. 6/28/2016 at 32–34. When C.C. left the bar around midnight, Defendant offered to give S.S. a ride home. *Id.* at 35, 56. Defendant and S.S. remained at the bar for about another hour. *Id.* at 37. They then left the bar together and went to a house S.S. believed was her own home located a block away from the bar. *Id.* at 39–40. Following the assault, while it was still dark outside, Defendant dropped S.S. off on the corner of Wilton Street and Haverford Avenue in Philadelphia. *Id.* at 44–45. From there, she walked to her children's father's house located at the end of the block. *Id.* At trial, counsel stipulated that Defendant's residence was located in Philadelphia. N.T. 6/29/2016 at 11.

Immediately before sentencing, in response to Defendant's motion for extraordinary relief, the Commonwealth stated the following:

> Well, without the benefit of the notes of testimony in this case, I'm just relying on my own recollection and read[ing] the complainant's statement. But the bar was [located] at Fifty-Second and Wyalusing and that's where they were together in Philadelphia. [] [D]efendant's home was at 5026 Westminster, which is a couple blocks away. So the jury could conclude that it happened at [] [D]efendant's home and then he drove her again a few blocks away to 3024, 324 North Wilton Street in Philadelphia. Your Honor, those are all within -- I Google [m]apped it -- but they're all within point three miles of one another. The city lines are, the closest one I think is City Ave, which is over three miles away.

N.T. 11/23/2016 at 4–5.

Although the Commonwealth did not provide direct proof that the assault took place in the city and county of Philadelphia, the events immediately before and after the assault occurred

4

in Philadelphia. Therefore, there was sufficient circumstantial evidence to establish jurisdiction. Accordingly, Defendant's first claim merits no relief.

### B. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence. Defendant alleges the complainant's testimony failed to establish the elements of sexual assault because she "did not state with any degree of certainty that sexual intercourse actually occurred between her and [] [D]efendant." Statement of Errors, ¶ 2. Defendant also claims the complainant's testimony failed to establish that "she was unconscious or that [D]efendant was aware she was unconscious at the time of any alleged contact between her and [D]efendant, as required under section 3126." *Id.*

On sufficiency review, all evidence is viewed in the light most favorable to the verdict winner to determine whether "there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (citation omitted). The Commonwealth may meet its burden "by means of wholly circumstantial evidence." *Id.* Finally, the reviewing court "may not weigh the evidence and substitute [its] judgment for the fact-finder." *Id.*

"The uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant." *Commonwealth v. McDonough*, 96 A.3d 1067, 1069 (Pa. Super. 2014) (citation omitted). Further, "it is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Commonwealth v. Lee*, 956 A.2d 1024, 1029 (Pa. Super. 2008).

5

"Sexual assault" is defined as: "Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1.

"A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: ... (4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring[.]" 18 Pa.C.S. § 3126(a)(4).

In the instant case, S.S. testified that after leading her to the back bedroom, Defendant pushed her onto the bed, at which point she went to sleep. While partially awake, S.S. began to feel her clothing being removed. She was unable to move or speak. Moreover, she described her "eyes [as] heavy" and feeling "tired." After her underwear and tights were fully removed, S.S. fell back to sleep. She next recalled Defendant on top of her from behind, with his penis inside of her vagina. Though S.S. was still unable to move or say anything, she testified that she had not given Defendant permission to engage in sexual intercourse with her. S.S. had neither a recollection of the assault ending nor an idea of how long it had lasted. Instead, she remembered Defendant helping her into the car and directing him to drive her to her children's father's house. N.T. 6/28/2016 at 40–43.

Contrary to Defendant's claim, S.S. did not express any uncertainty about whether sexual intercourse occurred between her and Defendant. She first stated that "[Defendant] was inside [her]" and then clarified by explaining, "his penis was in [her] vagina." *Id.* at 42. Defendant's

6

challenge to the victim's unconscious state is similarly without merit. Though S.S. was partially awake at some point during the incident, she was fully asleep after being pushed onto the bed, was unable to move or communicate, and lacked complete awareness of the duration of the assault. This evidence was sufficient to support the finding that S.S. was unconscious. *See Commonwealth v. Diaz*, 152 A.3d 1040, 1045 (Pa. Super. 2016) ("Because there was ample evidence from which the jury could properly find that the victim, during at least portions of the assault, lacked knowledge or awareness of both her own sensations and external events, and was not in the normal waking state, the evidence was sufficient to support the finding that she was unconscious within the meaning of the statute."). Therefore, Defendant's sufficiency of the evidence claim is without merit.

### C. *Legality of Sentence*

Defendant challenges the legality of his sentence based on *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (holding that SORNA's registration requirements are punitive, and therefore, application of SORNA retroactively violates the *ex post facto* clauses of the federal and state constitutions). Defendant claims that his lifetime registration requirement exceeds the statutory maximum sentences applicable to his convictions.

Section 1103 of the Crimes Code sets forth the maximum statutory sentence of imprisonment for felony convictions. *See* 18 Pa.C.S. § 1103. The Superior Court has explained the relationship between the period of registration and the length of incarceration as follows:

> SORNA's registration provisions are not constrained by [18 Pa.C.S. §] 1103. Rather, SORNA's registration requirements are an authorized punitive measure separate and apart from [the] [a]ppellant's term of incarceration. The legislature did not limit the authority of a court to impose registration requirements only within the maximum allowable term of incarceration; in fact, the legislature mandated the opposite and required courts to impose registration

7

requirements in excess of the maximum allowable term of incarceration.

*Commonwealth v. Strafford*, 194 A.3d 168, 173 (Pa. Super. 2018).

Accordingly, Defendant's lifetime registration requirement does not constitute an illegal sentence. Therefore, Defendant is not entitled to relief.

### D. *SORNA and Due Process*

Defendant alleges SORNA's registration requirements violate his right to due process under the Constitution of the Commonwealth of Pennsylvania. Defendant argues, "SORNA does not provide [him] the opportunity to prove that he is not highly likely to repeat the offense or similar behaviors, and that issue was never established during the trial." Statement of Errors, ¶ 4. In effect, "SORNA registration denies [Defendant] his right to reputation through the presumption that he is dangerous and presents a high risk [of] repeat[ing] sexually criminal behavior." *Id.*

The Superior Court may not "decide the case on constitutional grounds unless defendant had first raised [the constitutional challenge] in the trial court." *Commonwealth v. Duncan*, 421 A.2d 257, 259 n.3 (Pa. Super. 1980). Defendant failed to raise the issue of SORNA's constitutionality before this Court. Accordingly, Defendant's constitutional claim is waived.

### III. CONCLUSION

For all of the reasons herein, Defendant's judgment of sentence should be affirmed.

BY THE COURT:

DONNA M. WOELPPER, J.

8

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0013658-2013 |
| | : | |
| v. | : | |
| | : | SUPERIOR COURT |
| ANTHONY G. WILLIAMS | : | 1515 EDA 2019 |

## PROOF OF SERVICE

I hereby certify that I am this 17th day of October, 2019, serving the foregoing Opinion on the persons indicated below:

**By First Class Mail**
Lawrence J. O'Connor, Jr., Esq.
2301 Cherry Street #6A
Philadelphia, PA 19103

**By Interoffice Mail**
Lawrence Goode, Supervisor, Appeals Unit
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

_C. Quincy Conrad_
C. Quincy Conrad
Law Clerk to the Honorable Donna M. Woelpper

9