J-A21033-25

2025 PA Super 193

| ANDREW ROSAMILIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALASKA AIR CARGO | : | No. 1775 MDA 2024 |

Appeal from the Order Entered October 31, 2024
In the Court of Common Pleas of Clinton County Civil Division at No(s):
2023-00687

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED: SEPTEMBER 3, 2025**

Appellant, Andrew Rosamilia, appeals from the October 31, 2024, order entered in the Court of Common Pleas of Clinton County, which sustained Appellee, Alaska Air Cargo's ("Alaska Air"), preliminary objections based on improper venue in Pennsylvania and dismissed Appellant's complaint with prejudice. After our careful review, we affirm.

The relevant facts and procedural history are as follows: On February 9, 2024, Appellant filed a Complaint against Alaska Air[1] seeking monetary damages and presenting three counts: (1) breach of contract, (2) unjust

_____

[*] Former Justice specially assigned to the Superior Court.
[1] Appellant initially filed a Complaint with the magisterial district judge, who entered judgment in favor of Appellant. However, thereafter, Alaska Air filed a notice of appeal, as well as a *praecipe* for Appellant to file a Complaint, in the trial court.

enrichment, and (3) violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq*.

In support of his claims, Appellant averred that he lives in Lock Haven, Pennsylvania, and Alaska Air is a business operating with a last known address of Seattle, Washington. *See* Appellant's Complaint, filed 2/9/24, at 1 ¶¶ 1-2. Alaska Air is in the business of shipping cargo to and from various destinations in the United States, and Alaska Air advertises its services in Pennsylvania. *Id.* at 1 ¶ 3.

Appellant contended that, in July of 2021, while he was in Pennsylvania, he contacted Alaska Air to arrange for the shipment of various items, including a 15-horsepower manual start Mercury outboard motor ("the motor"), from Anchorage, Alaska, to King Salmon, Alaska. *Id.* at 1 ¶ 4. Appellant sought to have these items shipped to King Salmon as he intended to purchase a cabin in the area. Appellant paid for the shipment, and Alaska Air successfully shipped all items, including the motor, from Anchorage to King Salmon without incident. *Id.* at 1 ¶ 5.

Subsequently, the owners of the cabin decided not to sell it to Appellant, and, thus, Appellant contacted Alaska Air and requested that the previously shipped items, including the motor, be shipped from King Salmon back to Anchorage. *Id.* at 2 ¶ 6. Appellant claimed that Alaska Air's representative agreed to ship all items from King Salmon to Anchorage upon Appellant's

payment of a second shipping fee, and, thus, Appellant paid, in full, the shipping fee. *Id.* at 2 ¶¶ 7-8.

Alaska Air then shipped all items, except for the motor, from King Salmon back to Anchorage. *Id.* at 2 ¶ 9. Appellant claimed that, despite the fact he paid the second shipping fee in full, the motor remained in Alaska Air's possession in King Salmon. *Id.* at 2 ¶ 10. Appellant averred that he made numerous demands for Alaska Air to return the motor to Anchorage, but Alaska Air refused. *Id.* at 2 ¶ 11. Appellant alleged Alaska Air violated its contract with Appellant, unjustly denied Appellant use of the motor since July of 2021, and used "unfair or deceptive acts or practices." *Id.* at 3 ¶ 22.

On February 29, 2024, Alaska Air filed preliminary objections with a supporting brief. In setting forth the relevant facts, Alaska Air averred that, when Appellant requested that Alaska Air ship various items, including the motor, from Anchorage to King Salmon, the shipment occurred without incident. *See* Alaska Air's Preliminary Objections, filed 2/29/24, at 1 ¶ 2. Alaska Air noted that the motor was deemed to be a "dangerous good," which required a dangerous goods agent to process the shipment, and Appellant was so informed. *Id.* at 2 ¶¶ 4-5. A dangerous goods agent was available in Anchorage to approve the motor for shipment from Anchorage to King Salmon.

Subsequently, Appellant contacted Alaska Air to arrange for a second shipment. Specifically, Appellant requested the return of the previously shipped items to Anchorage. Alaska Air contended that all items, except for

- 3 -

the motor, were shipped from King Salmon to Anchorage. *Id.* at 1-2 ¶¶ 3-4. Alaska Air indicated there was no dangerous goods agent available in King Salmon, and, thus, when Appellant requested the shipment of the motor from King Salmon to Anchorage, Alaska Air was unable to do so. *Id.* Alaska Air contended that it informed Appellant the motor was a dangerous good, and, since Alaska Air was unable to accept the motor for shipment from King Salmon to Anchorage, Alaska Air did not charge Appellant shipping fees related thereto. *Id.* at 2 ¶ 6.

After setting forth the pertinent facts, Alaska Air alleged that Pennsylvania is an improper venue for the instant action, and, thus, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(1), Alaska Air requested the trial court dismiss the action. *Id.* at 2 ¶¶ 9-10. Relevantly, Alaska Air averred Appellant is bound by the Alaska Air Cargo Domestic Conditions of Contract ("the carriage contract"), which specifically provides the parties consented to exclusive jurisdiction and venue of state/federal courts situated in King County, Washington. *Id.* at 3-5 ¶¶ 15-25. Citing to 14 C.F.R. § 253, which provides that carriage contracts are incorporated by reference into airline tickets, Alaska Air averred the forum selection clause in the carriage contract is valid, enforceable, and reasonable. *Id.* at 3 ¶ 16.

Further, in support of its argument that venue in Pennsylvania is improper, Alaska Air claimed the proper forum is King County, Washington, since its headquarters are based in King County at the Seattle-Tacoma

International Airport in the State of Washington. *Id.* at 6 ¶ 29. Alaska Air noted the shipments occurred in Alaska, which is closer to Washington as opposed to Pennsylvania. *Id.* at 6 ¶¶ 28-29. Further, Alaska Air noted Appellant has substantial contacts in Alaska, which is closer to Washington than it is to Pennsylvania. *Id.* Thus, Alaska Air contended the proper venue was King County, Washington, as opposed to Clinton County, Pennsylvania.

On May 2, 2024, Appellant filed a memorandum answer in opposition to Alaska Air's preliminary objections. Appellant alleged that he was not bound by the carriage contract. He noted he did not endorse the carriage contract, and he is not identified in the carriage contract. *See* Appellant's Memorandum Answer, filed 5/2/24, at 3. Moreover, Appellant contended that 14 C.F.R. § 253, to which Alaska Air cited, is inapplicable since it applies solely to "passenger air transportation." *Id.* at 3-4. In any event, Appellant claimed that, assuming, *arguendo*, 14 C.F.R. § 253 is applicable to the instant matter, Alaska Air otherwise failed to satisfy the requirements thereof. *Id.* at 4.

Further, Appellant claimed that Alaska Air's preliminary objections raised issues of fact, which could not be determined from the facts of record. In this vein, Appellant noted that Alaska Air alleged the existence of an agreement to venue in King County, Washington. However, Appellant averred this allegation created an issue of fact since Appellant did not attach a contract to his Complaint.

The trial court filed an order indicating Alaska Air could file a reply brief, and on June 12, 2024, Alaska Air filed a reply brief in support of its preliminary objections. Therein, Alaska Air contended that Appellant, via his Complaint wherein he raised a claim of breach of contract, acknowledged he is bound by the carriage contract. *See* Alaska Air's Reply Brief, filed 6/12/24, at 1. Alaska Air suggested Appellant cannot "pick and choose" which portions of the carriage contract are enforceable. *Id.*

Moreover, Alaska Air contended the issue of venue in the instant matter is clear, and venue properly lies in King County, Washington, as opposed to Clinton County, Pennsylvania. Specifically, Alaska Air contended there is no dispute the carriage contract was executed for Alaska Air to ship goods between two cities in the State of Alaska. *Id.* at 4. Also, Alaska Air argued there is no dispute that Alaska Air is headquartered in the State of Washington. *Id.*

By order and opinion entered on July 23, 2024, the trial court indicated it was scheduling a hearing to address Alaska Air's preliminary objections. Relevantly, the trial court indicated "the alleged Agreement containing the forum selection clause was not attached to the Complaint; instead, it was attached to [Alaska Air's] Preliminary Objections." Trial Court Opinion, filed 7/23/24, at 5. Further, the trial court indicated that, since it was "unable to rely on [Alaska Air's] recitation of the facts, [the court] lacks sufficient

information to determine whether venue in this case is appropriate, and [the court] will schedule this matter for a factual hearing." *Id.*

Thereafter, on October 10, 2024, the matter proceeded to an evidentiary hearing. Larry Fulton testified he lives in Palmer, Alaska, and he has worked for Alaska Air for forty-three years. N.T., 10/10/24, at 4. He is currently the operations appliance manager for Alaska Air in the State of Alaska, and his job duties include oversight of Alaska Air's cargo and compliance with regulations. *Id.* at 5.

Mr. Fulton confirmed Alaska Air gave Appellant two air bills. *Id.* at 6-7. The first air bill was for the shipment of items from Anchorage to King Salmon, and the shipment was completed without incident. *Id.* at 7. The second air bill was for the shipment of items from King Salmon to Anchorage. *Id.* He noted both shipments involved the motor, which is an item classified as "a dangerous good." *Id.* While the motor was successfully approved for shipment from Anchorage to King Salmon, Alaska Air had difficulty with getting approval for the shipment of the motor from King Salmon to Anchorage. *Id.*

Mr. Fulton testified the log notes for Appellant's account, which are kept in the normal course of business, contained a notation on July 22, 2021, that

"the shipper knows he needs DG paperwork for motor. Gave him TGI name."[2]

*Id.* at 9. Mr. Fulton indicated Appellant was referred to TGI to get assistance with processing the paperwork for the dangerous good. *Id.*

Mr. Fulton testified the log notes for August 3, 2021, contained a notation indicating "called to see if this shipment could be returned to ANC. AKN does not accept DG, dangerous good. So, I tried to call them. No answer. FLT is on ground. Will try to call AKN back later."[3] *Id.* Mr. Fulton explained the entry meant "the shipper from the original air bill would like the shipment returned from King Salmon back to Anchorage and then he's agreeing to pay the cost for that product to be returned." *Id.* at 10. "The shipper" refers to Appellant, and the entry was made by an employee of Alaska Air. *Id.* at 11.

Mr. Fulton indicated the log notes for January 24, 2022, contained the following notation:

> I received a call from shipper [Appellant] about this[.] Last July it flew ANC to AKN, but needed to be returned to ANC. All pieces were returned except for the dangerous goods piece due to AKN not having dangerous goods agents. I confirmed with Hans in AKN. They still have the dangerous goods piece. Hans told me it was Larry Fulton who was looking into getting the dangerous goods agent there, but Hans said he's not sure of the status.

---

[2] He explained "DG" is an abbreviation for "dangerous goods." *Id.* at 7. "TGI" is "an entity in Alaska [that] does freight forwarding stuff [and] also DG dock preps." *Id.* at 6.

[3] Mr. Fulton explained "ANC" is an abbreviation for "Anchorage," "AKN" is an abbreviation for "King Salmon," and "FLT" is an abbreviation for "flight." *Id.* at 10.

*Id.*

Mr. Fulton explained the log entry meant there was a dangerous good in King Salmon, and the agents in King Salmon were not qualified to accept or handle dangerous goods outbound. *Id.* at 12. Therefore, Alaska Air could not accept the dangerous good (*i.e.*, the motor) for shipment from King Salmon to Anchorage. The log entry discussed sending an agent to King Salmon so the motor could be returned to Anchorage. *Id.*

Mr. Fulton testified the log notes for January 24, 2024, contained the following entry:

> I called shipper [Appellant] a couple of times and was only able to reach his voicemail. I left a message detailing the communication from Larry. [Appellant] has been advised $600 fee for getting the agent plus shipping and dangerous goods fee. He [has been advised] to call us back if he wants to get this in motion or if he wants us to dispose of it. [I] also gave him the option of giving it to someone else.

*Id.*

Mr. Fulton testified the entry meant that an Alaska Air employee advised Appellant that, in order to get the motor shipped from King Salmon to Anchorage, he needed to pay the costs of having dangerous goods paperwork completed, the costs of shipping, and the costs to have an Alaska Air agent travel to King Salmon to accept the product as a return to Anchorage. *Id.* Appellant needed "to get new paperwork from TGI to return [the motor] to King Salmon." *Id.* at 14.

Alaska Air then entered into evidence the "Alaska Air Rules, Regulations, and Charges for Carriage of Cargo." *Id.* at 15. Mr. Fulton testified the "rules and regulations document" was official company policy kept in the regular course of business, and it set forth the rules regarding the transport of dangerous goods. *Id.* He noted Alaska Air created the "rule and regulations document" to comply with federal laws, which require specific methods of handling dangerous goods. *Id.*

Alaska Air then entered into evidence the "Alaska Air Cargo Domestic Conditions of Contract," which is a carrier contract. *Id.* at 16. Mr. Fulton testified "it's a contract for [Alaska Air] to carry [the customer's] product." *Id.* He indicated that, anytime cargo is shipped through Alaska Air, the terms of the contract apply, and it is an official Alaska Air policy. *Id.* Mr. Fulton noted the contract contains the following language:

> These conditions of contract will be governed by and construed and enforced in accordance with the laws of the State of Washington and, in the event of a dispute arising out of these Conditions of Contract, the parties consent to exclusive jurisdiction and venue in the state and federal court sitting in King County, Washington. If any party employs attorneys to enforce any rights arising out of or relating to this agreement, the substantially prevailing party shall be entitled to recover costs, including reasonable attorneys' fees.

*Id.* at 17.

Mr. Fulton confirmed that Alaska Air is headquartered in Seattle, Washington, at the Seattle-Tacoma International Airport. *Id.* at 19. Seattle is in King County, Washington. *Id.* Mr. Fulton testified the transaction at

issue took place in the State of Alaska, and the State of Pennsylvania did not

"factor" into the transaction or shipment from King Salmon to Anchorage. ***Id.***

At this point, the following relevant exchange occurred:

> **[Appellant's counsel]:** Your Honor, I think, again, I just object to the relevance of all this testimony. The allegation of [Alaska Air] is that there is an agreement between the parties that this venue be in Washington State. Anything outside of the agreement I think is completely irrelevant where we're at in the proceedings. These are preliminary objections based on one specific issue, and we've kind of danced around the issue, and now we're completely wholly outside of the issue.
>
> Trying to figure out where this contract took place and where things were shipped, none of it matters because the allegation is that there is an agreement between the parties that the venue be in Washington. Outside of that particular issue, we're not here for anything else, and this is really going to, I guess, some other sort of argument that might be made, but that's not what we're here for.
>
> **[Alaska Air's counsel]:** Your Honor, this, to my knowledge, is an evidentiary hearing. We have a witness here who is involved in this transaction. He knows where the [motor] is located. He knows how a resolution of this transaction could be had three years later. He knows about the location and, you know, headquarters of his company. He knows about the cities where this took place.
>
> All these factors are relevant to venue and a venue analysis, and that's part of our preliminary objection, that's part of our brief, that's part of our supplemental brief. We think all of that is relevant.
>
> **[Appellant's counsel]:** That's absolutely not part of their preliminary objections. Their preliminary objections state that there is an agreement between the parties that the venue be in Washington state. That has absolutely nothing to do with any other objection. That's the only objection that they have made is that there is an agreement.
>
> **[Alaska Air's counsel]:** All of that is relevant to the argument.
>
> **The Court:** I'll overrule it. Let's move on.

*** 

> **[Alaska Air's counsel]:** Just one last question about your contract of care [*sic*] that we looked at that had the venue selection clause. What's your understanding [as to] why there is a venue selection clause that specifies Washington State? What's your understanding based on your employment?
>
> **[Appellant's counsel]:** I guess I object to this too as irrelevant. The question doesn't come into it.
>
> **The Court:** Overruled.
>
> **[Mr. Fulton]:** It's our headquarters and base of operation.

*Id.* at 20-22.

Mr. Fulton testified that the carriage contract's requirement that King County, Washington, is where jurisdiction lies for civil disputes is intertwined with the fact that Alaska Air's headquarters are in King County, Washington. *Id.* at 22.

On cross-examination, Mr. Fulton agreed that the transaction at issue did not involve "passenger air transportation." *Id.* at 23. Mr. Fulton admitted the carrier contract neither specified Appellant nor referenced a specific shipment. *Id.* at 24. Rather, it is a "general" carrier contract provided to customers by Alaska Air. *Id.* at 25. He also confirmed the "rules and regulations document" did not reference Appellant or his specific shipment, and there is no signature on the document. *Id.* at 27.

On redirect examination, Mr. Fulton testified it is not customary for customers to sign carriage contracts; but rather, carriage contracts are incorporated by reference. *Id.* at 31. He indicated Appellant's air bills

provided "fine print" that the carriage contract was available, and he noted the carriage contract is "available publicly." *Id.* at 32.

At the conclusion of Mr. Fulton's testimony, Alaska Air's counsel indicated he wished to call Appellant to testify to facts relating to venue. Appellant's counsel objected, and the relevant exchange occurred:

> **[Appellant's counsel]:** The objection is that there is an agreement in the venue selection clause. That's the objection, that there is an agreement between the parties that this be in Washington State. Everything else is entirely irrelevant for today's purposes. That's the point the Court scheduled a hearing on evidence to determine whether there was an agreement for this to be transferred to Washington State. That's it.
>
> So, the question of any contacts in Clinton County, any contacts in Alaska, is entirely irrelevant for today's purposes, as was the vast majority of the Alaska Air witness' testimony. It had nothing to do with this.
>
> The question is, is there an agreement between the parties, and if so, does it contain a venue selection clause, and where is that venue selection clause? That's the issue for the Court to determine today. Anything else is completely superfluous.
>
> **[Alaska Air's counsel]:** Your Honor, with respect, it's my [preliminary] objection, and I'm perfectly capable of explaining my [preliminary] objection to the Court. My objection is, yes, there is a contract that governs. My briefing and supplemental briefing also included an analysis of this venue and why even in light of the contract, yes, we believe the clause is valid, but we also believe the Court should consider factors about why this venue is improper. You can look at the text of the contract. We believe it absolutely applies in this case, and this case should have been filed in Washington, but we also think the Court should consider the issues we've had in this particular venue where they're trying to keep the case.
>
> **[Appellant's counsel]:** The entirety of the [preliminary] objection discusses venue selection. It discusses the applicability of venue selection. It discusses the validity of venue selection clauses. That's what this is about. It's about the contract. It is not about other factors. That is it.

- 13 -

[Alaska Air's counsel]: Your Honor, all of that is relevant for venue selection analysis. It's in the briefing. It's in the supplemental briefing.

The Court: I'll allow limited testimony on whether venue is proper [in Pennsylvania], but not other jurisdictions other than the two we're talking about. Limited.

*Id.* at 36-37.

Appellant testified he has a "very transient lifestyle," and he has an address in Ketchikan, Alaska, as well as multiple places where he stays in Pennsylvania, Maryland, and South Dakota. *Id.* at 38. He indicated that, to the extent he has a primary residence, it is in Ketchikan, Alaska; however, he receives mail at his address in Lock Haven, Pennsylvania. *Id.* at 38-39.

Appellant testified he had never seen the carriage contract used by Alaska Air. *Id.* at 41. He admitted that, before he requested the first shipment, from Anchorage to King Salmon, he knew the motor was classified as a "dangerous good." *Id.* at 42.

At this point, the trial court permitted the attorneys to make arguments based on the testimony and applicable law. Alaska Air's counsel argued that Pennsylvania is an improper venue, and proper venue lies in King County, Washington. *Id.* at 44-47. Specifically, he argued that Appellant was bound by the carrier contract, which includes a venue selection clause. *Id.* at 45. He noted the law permits companies that do business throughout the country to have predictability and anticipate which jurisdiction is going to govern its

transactions. *Id.* Alaska Air's counsel argued "these venue selection clauses are presumptively valid." *Id.* at 46.

Moreover, as to proper venue, Alaska Air's counsel noted that Appellant's primary residence is not in Pennsylvania; however, Appellant has substantial connections to Alaska. *Id.* at 45. Further, the relevant shipment took place in Alaska. *Id.* Additionally, Alaska Air's counsel argued venue was proper in King County, Washington because "my client is headquartered in Washington State." *Id.*

In response, Appellant's counsel argued the preliminary objections "are pretty clear and pretty well spelled out that this is based upon a venue selection clause in a contract." *Id.* at 47. Appellant's counsel argued 14 C.F.R. § 253 is inapplicable to this matter because that statute addresses "passenger air transportation," which is not at issue in this case. *Id.* Appellant's counsel further argued the venue selection clause in the carrier contract is not binding since Appellant is not referenced in the contract. *Id.*

At the conclusion of the hearing, by order entered on October 31, 2024, the trial court sustained Alaska Air's preliminary objections and dismissed Appellant's Complaint with prejudice. In the accompanying opinion, the trial court reasoned, in relevant part, as follows:

> Under Pennsylvania law, "corporations have a constitutional right to seek a change of venue." *PECO Energy Co. v. Phila. Suburban Water Co.*, 802 A.2d 666, 668 (Pa.Super. 2002)[.] The proper method of seeking a change [of improper venue] is through preliminary objections. *PECO Energy Co.*, 802 A.2d at 668.

Under the Pennsylvania Rules of Civil Procedure:

[A] personal action against a corporation or similar entity may be brought in and only in a county where (1) the registered office or principal place of business of the corporation or similar entity is located; (2) the corporation or similar entity regularly conducts business; (3) the cause of action arose; (4) a transaction or occurrence took place out of which the cause of action arose; or (5) the property or part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

Pa.R.Civ.P. 2179(a). Because [Appellant] does not seek equitable relief in this case, the [trial] court finds that Rule 2179(a)(5) is inapplicable. Therefore, the [trial] court will briefly consider each of the first four (4) subdivisions of Rule 2179(a) to determine whether Clinton County, Pennsylvania, is the appropriate venue for this case.

Rule 2179(a)(1) allows a plaintiff to bring a personal action against a corporate defendant in a county where "the registered office or principal place of business of the corporation…is located." Pa.R.Civ.P. 2179(a)(1). The testimony of Larry Fulton, a forty-three (43) year employee of Alaska Air, establishes that [Alaska Air] is headquartered at [the] Seattle-Tacoma International Airport in King County, Washington. [Appellant] also stated in [his] Complaint that [Alaska Air's] "last known address" was located in Seattle, Washington, and [Alaska Air's] headquarters are "believed to be in Seattle, Washington." It is, therefore, clear to [the trial] court that [Alaska Air's] "registered office" is in King County, Washington. The [trial] court has not received testimony or argument that [Alaska Air] has a "principal place of business" in Clinton County, Pennsylvania, and the [trial] court, therefore, concludes that Rule 2179(a)(1) cannot be used to establish Clinton County as a proper venue in the instant case.

Under Rule 2179(a)(2), a personal action against a corporation may also be brought in a county where "the corporation or similar entity regularly conducts business." Pa.R.Civ.P. 2179(a)(2). To determine where a corporation "regularly conducts business," courts must "focus on the nature of the acts the corporation allegedly performs in that county," and assess those acts "both as to their quantity and quality." **Gilfor ex rel. Gilfor v. Altman**, 770 A.2d 341, 345 (Pa.Super. 2001).

- 16 -

The Superior Court [has] explained that "'quality of acts' means those directly furthering or essential to, corporate objects; they do not include incidental acts." *Id.* Meanwhile, "'quantity of acts' means those acts which are so continuous and sufficient to be general or habitual." *Id.* In other words, to meet the "quality" prong of the analysis under Rule 2179(a)(2), a corporate defendant's contacts with the county must be essential to or in direct furtherance of corporate objects, rather than being incidental acts.

Importantly, mere advertisement or solicitation of business within the county generally is not sufficient to satisfy the quality test because advertisement is generally incidental to the corporate objects.

Meanwhile, to satisfy the "quantity" prong of the quantity-quality analysis, "acts must be sufficiently continuous so as to be considered habitual." *Hangey v. Husqvarna Pro. Prods., Inc.*, 247 A.3d 1136, 1141 (Pa.Super. 2021)[, affirmed, ___ Pa. ___, 304 A.3d 1120 (2023)]. In considering the quantity prong, Pennsylvania appellate courts have often considered the percentage of overall business a defendant company conducts in a county. *Hangey*, *supra*. However, no court has stated that the percentage of a defendant's business is the sole evidence relevant to the 'quantity' analysis. *Id.* Instead, courts must determine whether all evidence presented, including the scope of a defendant's business, viewed in the context of the facts of the case, establish that a defendant's contacts within the venue satisfy the quantity prong. *Id.*

In the instant case, the Complaint does not contain any specific references to [Alaska Air's] corporate activities within Clinton County, Pennsylvania. The only reference made to [Alaska Air's] business activities is found in Paragraph 3 of the Complaint, in which [Appellant] asserts that [Alaska Air] "has been in the business of shipping cargo to/from various destinations throughout the United States, and [it] advertises its services to those throughout the United States, including the Commonwealth of Pennsylvania." As stated above, Paragraph 3 contains no specific reference to Clinton County. Moreover, the [trial] court did not receive testimony during the factual hearing on the question of venue that [Alaska Air] has "habitual" contacts within Clinton County, Pennsylvania. It bears repeating: the [trial] court received no testimony, and the Complaint contains no allegations, of *any* business activities [Alaska Air] conducts in Clinton County. For this reason, the [trial] court finds that the quality-quantity test

- 17 -

has been unsatisfied, and Rule 2179(a)(2) cannot provide a basis for establishing the propriety of Clinton County, Pennsylvania, as a venue for the instant case.

Rules 2179(a)(3) and (a)(4) provide that a personal action against a corporate defendant may be brought in a county where "the cause of action arose," or where "a transaction or occurrence took place out of which the cause of action arose." Pa.R.Civ.P. 2179(a)(3), (a)(4). In the instant case, the cause of action was an alleged agreement between [Appellant] and [Alaska Air] to transport various goods, including a motor, between King Salmon, Alaska, and Anchorage, Alaska. The Complaint alleges that "[i]n or around July 2021, [Appellant] contacted [Alaska Air] *from Pennsylvania* to its headquarters believed to be in Seattle, Washington, to ship various items from Anchorage, Alaska, to King Salmon, Alaska." [Appellant] admits in the Complaint that, following this transaction, "the items were shipped to King Salmon, Alaska, by [Alaska Air]."

The alleged dispute between the parties arose, however, when [Appellant] arranged a *second* shipment of the same items in the opposite direction, that is, from King Salmon, Alaska, to Anchorage. The Complaint then alleges that, despite [Appellant's] payment for shipment, [Alaska Air] failed to ship the motor. The Complaint does *not* allege that this second transaction, which gives rise to this lawsuit, was initiated by [Appellant] from Pennsylvania. Even if the Complaint *did* so allege, the Complaint still does not contain any allegation that [Appellant's] cause of action arose in Clinton County, Pennsylvania, specifically, nor does the Complaint allege that the transaction or occurrence out of which [Appellant's] cause of action arose occurred in Clinton County, Pennsylvania. For these reasons, neither Rule 2179(a)(3) nor (a)(4) can be used to establish the propriety of Clinton County, Pennsylvania, as the proper venue for this case.

Pursuant to the above, and under the Pennsylvania Rules of Civil Procedure, the [trial] court finds venue in this case to be improper in Clinton County, Pennsylvania, and will accordingly SUSTAIN [Alaska Air's] preliminary objections and DISMISS [Appellant's] Complaint with prejudice.[4]

_____

[4] Pennsylvania Rule of Civil Procedure 1006(e) provides that, "[i]f a preliminary objection to venue is sustained and there is a county of proper
*(Footnote Continued Next Page)*

Trial Court Opinion, filed 10/31/24, at 6-10 (some citations, quotation marks, and quotations omitted) (citations to record omitted) (italics in original) (footnote added).

On November 27, 2024, Appellant filed a timely notice of appeal. On December 9, 2024, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied on December 16, 2024, and the trial court filed a responsive Rule 1925(a) opinion on January 2, 2025.

On appeal, Appellant sets forth the following sole issue in his "Statement of the Questions Involved" (verbatim):

A. Whether the trial court committed an error of law/abuse of discretion in granting Appellee's preliminary objections regarding venue, when it considered issues outside of the scope of Appellee's preliminary objections which maintained that venue was based oslely [*sic*] upon a "forum selection clause" that Appellee claims was incorporated by reference into a "contract of carriage"?

Appellant's Brief at 6 (unnecessary capitalization and suggested answer omitted).

On appeal, Appellant admits Alaska Air's preliminary objections sought dismissal of Appellant's Complaint due to improper venue. However, Appellant contends Alaska Air's entire argument was "solely [based] on the alleged existence of a forum selection clause incorporated by referenced [*sic*] into an

_____

venue within the State the action shall not be dismissed but shall be transferred to the appropriate court of that county." Pa.R.Civ.P. 1006(e). Here, the trial court determined venue was not proper in Pennsylvania, and, therefore, the trial court did not transfer venue to a different county.

- 19 -

alleged contract of carriage[.]" Appellant's Brief at 11. Therefore, Appellant argues that, since the sole argument set forth in Alaska Air's preliminary objections related to whether venue was dictated by "the alleged forum selection clause," Alaska Air waived all other arguments/rationale for improper venue. *Id.* at 13.

Consequently, Appellant contends the trial court erred when it "undertook a traditional improper forum analysis under Pa.R.Civ.P. 2179(a), in ruling that the corporate defendant did not have sufficient ties to Clinton County, Pennsylvania, [thus] making the forum improper." *Id.* at 11. Appellant asserts the trial court "failed to consider that any argument/decision concerning [a] venue analysis under Pa.R.Civ.P. 2179(a) was waived [by Alaska Air], and, instead, [erroneously] based its decision to dismiss this matter with prejudice upon that unasserted basis." *Id.* at 14. That is, Appellant does not challenge whether the substance of the trial court's analysis under Pa.R.Civ.P. 2179 was erroneous; but rather, he contends the trial court was not permitted to undertake such an analysis since Alaska Air's preliminary objections did not present such a rationale for improper venue.

In reviewing Appellant's claim, we note this Court has recently held as follows:

> "A trial court's ruling on venue will not be disturbed if the decision is reasonable in light of the facts. A decision to transfer venue will not be reversed unless the trial court abused its discretion." ***Krosnowski v. Ward***, 836 A.2d 143, 146 (Pa.Super. 2003) (*en banc*) (quotation marks and citations omitted). Indeed, as this Court has held, "if there exists any proper basis for the trial

court's decision to grant the petition to transfer venue, the decision must stand." *Id.* Further, [t]he plaintiff's choice of forum is given great weight. Thus, the party seeking a change of venue 'bears the burden of proving that a change of venue is necessary, while a plaintiff generally is given the choice of forum so long as the requirements of personal and subject matter jurisdiction are satisfied.' *Zampana-Barry v. Donaghue*, 921 A.2d 500, 503 (Pa.Super. 2007) (quotation marks and quotation omitted))[.]

As to the abuse of discretion standard:

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the judgment is the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Mendoza-Colon v. Luscomb, Inc.*, 335 A.3d 1207, 1212 (Pa.Super. 2025) (quotation and citation omitted). *See Battuello v. Camelback Ski Corp.*, 598 A.2d 1027, 1028 (Pa.Super. 1991) (holding the determination of whether the trial court abused its discretion regarding venue depends on the individual facts of each case and will not be disturbed if the trial court's decision is a reasonable one in view of those facts).

Our Supreme Court has recognized that "[v]enue is predominately a procedural matter, generally proscribed by rules of th[e] [Supreme] Court." *McGinley v. Scott*, 401 Pa. 310, 164 A.2d 424, 429 (1960). Corporations have a constitutional right to seek a change of venue, and the proper method

for challenging improper venue in a civil action is by way of preliminary objections. **See PECO Energy Co.**, **supra**.

Further, our Supreme Court, as well as this Court, have recognized the interplay between Pennsylvania Rules of Civil Procedure 1028(a)(1), 1006(e), and 2179. **See generally Hangey**, **supra**; **Kazanjian v. First Liberty Ins. Corp.**, 507 EDA 2021, 284 A.3d 942 (Pa.Super. 2022) (Table) (unpublished memorandum).[5] Relevantly, Rule 1028(a)(1) permits a party to file preliminary objections based upon improper venue. **See** Pa.R.Civ.P. 1028(a)(1).[6] Rule 1006(e) provides, in relevant part, that "[i]mproper venue shall be raised by preliminary objection and if not so raised shall be waived." Pa.R.Civ.P. 1006(e). Finally, Rule 2179 sets forth where "a personal action against a corporation or similar entity may be brought[.]" Pa.R.Civ.P. 2179(a). Specifically:

> **Rule 2179. Venue in an Action Against a Corporation or Similar Entity**
>
> **(a) General Rule.** Except as otherwise provided by an Act of Assembly or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in a county where

---

[5] We note that, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value.

[6] The *Note* to Pa.R.Civ.P. 1028(a)(1) provides that "[o]f the three grounds available to challenge venue, only improper venue may be raised by preliminary objection as provided by Rule 1006(e)." Pa.R.Civ.P. 1028(a)(1), *Note*.

(1) the registered office or principal place of business of the corporation or similar entity is located;

(2) the corporation or similar entity regularly conducts business;

(3) the cause of action arose;

(4) a transaction or occurrence took place out of which the cause of action arose; or

(5) the property or a part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

Pa.R.Civ.P. 2179(a) (bold in original).

Here, there is no dispute that Alaska Air challenged the propriety of venue in Pennsylvania via a preliminary objection. The issue is whether the trial court "overstepped its bounds" by examining and applying the requirements of Rule 2179(a) to the instant matter. *See* Appellant's Brief at 10.

In addressing Appellant's specific contention, the trial court stated the following:

The [trial] court notes that, in ruling on [Alaska Air's] preliminary objections to [Appellant's] Complaint, the [trial] court applied each of the factors listed in Rule 2179(a) of the Pennsylvania Rules of Civil Procedure, which governs venue in personal actions against corporations. This analysis was undertaken in response to [Alaska Air's] preliminary objections, which argued, in relevant part, that "the subject shipments took place in Alaska," "[Alaska Air's] company headquarters are based in Seattle-Tacoma, Washington," and [Appellant] had "apparent substantial contacts with Alaska[.]"

In applying Rule 2179(a) to the facts of the instant case, the [trial] court found venue to be improper in Clinton County, Pennsylvania. As such, for the [trial] court to consider the outstanding questions surrounding the incorporation of an alleged

- 23 -

forum selection clause into an alleged contract of carriage would be, in the [trial] court's judgment, premature. The [trial] court, therefore, believes that these questions are best answered by a court sitting in a proper venue.

Trial Court Opinion, filed 1/2/25, at 2.

We conclude the trial court did not abuse its discretion, and contrary to Appellant's assertion, the trial court did not "overstep its bounds" in applying Pa.R.Civ.P. 2179. While the "primary thrust" of Alaska Air's preliminary objection related to the theory that venue was improper in Pennsylvania because Appellant was bound by a forum selection clause requiring venue in King County, Washington, we agree with the trial court that a fair reading of Alaska Air's preliminary objection also included assertions related to Rule 2179.

Moreover, despite Appellant's attempts during the evidentiary hearing to narrow Alaska Air's preliminary objection argument to solely whether there was a binding forum selection clause in this matter, Alaska Air advised the trial court that other factors, namely, those related to where the transaction occurred, where the motor was located, and where the company is headquartered, where "all factors…relevant to venue and a venue analysis, and that's part of our preliminary objection." N.T., 10/10/24, at 20-22. Also, Alaska Air argued during the evidentiary hearing that other "factors," including the absence of any connection to Pennsylvania in this case, would be applicable to the venue analysis. *Id.* Notably, all these factors related to an analysis of proper venue for corporations under Rule 2179(a).

For all of the foregoing reasons, we conclude the trial court did not abuse its discretion in applying Pa.R.Civ.P. 2179 to the instant matter. ***See Warehime v. Warehime***, 580 Pa. 201, 860 A.3d 41, 46 (2004). In the case *sub judice*, the averments set forth in Alaska Air's preliminary objections and supporting brief, as well as the testimony during the evidentiary hearing, illustrate there were apparently reasonable grounds for the trial court to sustain Alaska Air's preliminary objections and apply Rule 2179.[7] Thus, we affirm.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/03/2025

---

[7] Given Appellant has not contended the substance of the trial court's analysis under Pa.R.Civ.P. 2179 was erroneous, we need not analyze the issue further. In any event, based on the excerpt from the trial court's October 31, 2024, opinion, which we set forth *supra*, we conclude the trial court made proper factual findings and find no legal error in its reasoning. ***See*** Trial Court Opinion, filed 10/31/24, at 6-10. Finally, we note that, although Appellant avers the trial court erred and "overstepped" in applying Rule 2179, Appellant has not explained how he was prejudiced. Alaska Air made it clear during the evidentiary hearing that its preliminary objections encompassed the factors for proper venue as set forth in Rule 2179, and Appellant had ample opportunity to cross-examine Alaska Air's witness.